Warren K. BROWN *v.* KENNEDY WELL WORKS, INC.

90-21                                          788 S.W.2d 948

Supreme Court of Arkansas
Opinion delivered May 7, 1990
[Rehearing denied May 29, 1990*]

*Hugh L. Brown*, for appellant.
*Lonnie P. Gehring*, for appellee.

---

*Turner, J., would grant rehearing.

ROBERT H. DUDLEY, Justice. Appellant, Warren Kenneth Brown, filed a complaint in chancery court asking that a commissioner's deed to appellee be set aside and that title to 160 acres be quieted in a family trust. The Chancellor declined to grant the relief prayed. We affirm.

Howard Bone owned the 160 acres now in dispute. He conveyed the land to one of his daughters, Chlotene Stalcup, and gave a substantial amount of cash to each of two grandsons. Another of his daughters, Odene Brown, and his only son, Bill Bone, thought the elder Bone had become incompetent. They sought advice from an attorney, Randall Gammill, who suggested they seek a guardianship of the estate of Mr. Bone. Gammill filed a petition for guardianship of the estate in July 1979. After a lengthy contested hearing in probate court, Bone was declared incompetent and on June 15, 1981, Odene Brown was appointed guardian of his estate.

Odene Brown, in her capacity as guardian, then employed Gammill to recover the 160 acres. A contingent fee of 25% of any property recovered by settlement, or 40% of any property recovered through suit was agreed upon. On June 19, 1981, the fee agreement was approved by the probate court.

After another lengthy contested hearing, this time in chancery court, the Chancellor found that the deed from Howard Bone to his daughter, Chlotene Stalcup, should be set aside. That order was filed on May 21, 1982. At that time, the title to the 160 acres was back in the estate of Howard Bone, subject to the guardianship of his estate, and Gammill was entitled to an attorney's fee equal to the value of 40% of the land. At the request of Odene Brown, Gammill did not seek partition of the 160 acres. Instead, 40% of the rental income from the land was paid to Gammill in 1982.

Shortly thereafter, on February 2, 1983, Howard Bone died and left a will which provided in part:

1. I direct that all my just debts and funeral expenses be paid as speedily as possible.

. . .

3. All the rest and residue of my estate whether real, personal, or mixed I give, bequeath and devise to Lawrence W. Holloway in trust, for the following purposes, to-wit:

(a) I direct that my Trustee collect all of my personal property and either divide in kind or sell and divide the proceeds thereof one-third ($^1/_3$) to my daughter, Chlotene Stalcup, my oldest daughter, and one-third ($^1/_3$) to Odene Brown, my other living daughter, and one-sixth ($^1/_6$) each to the heirs of Martha Jane (Sissie) Cleveland, my deceased daughter, namely: Lynn Cleveland and Ronnie Cleveland and empower him to do any and all things necessary for the proper and economical division of said personal property. . . . The real estate which I may die seised and possessed I direct said Trustee to manage the same in the manner which appears to him to be the most profitable to the above named beneficiaries of this Trust and to pay to them or their respective heirs annually the net profits therefrom keeping in mind that he will need a reasonable amount of cash on hand for the purpose of operating expenses and taxes in managing said real property. At the death of the last of the above named beneficiaries I direct said Trustee to distribute to the heirs of said Beneficiaries per stirpes said real estate and if he finds it necessary at that time to sell said real estate for the purpose of partition I hereby empower and direct him to proceed to said sale under the supervision of the proper court of Prairie County, Arkansas.

Odene Brown employed Gammill to cause probate to be opened and the guardianship to be closed. Meanwhile, neighboring landowners were interested in purchasing the 160 acres from the estate. One neighbor offered $600.00 per acre, but Odene Brown declined to sell the land.

Gammill, who had not filed a claim against the estate, began to worry about his fee. Odene and the other life tenants did not want the farm divided to pay the fee. They wanted more time to raise the money. Gammill then agreed to take a note and mortgage based upon 40% of the 160 acres times $600.00 per

acre. Subsequently, a note was executed by Odene Brown and the other life tenants in the amount of $43,757.65, and they gave a mortgage on the 160 acres as security for the debt. The note and mortgage were assigned to the Prairie County Bank which went into receivership. Its assets, including the note and mortgage, were taken over by the Federal Deposit Insurance Corporation. The note was not paid and the FDIC ultimately began to take action to collect on the note.

The estate of Howard Bone was still open, and the FDIC filed a petition asking the probate court to determine whether the estate was bound by the note and mortgage. The probate court heard testimony and found "that Odene Brown was in fact acting in her official capacity in the procurement and execution of these instruments, that said actions were in the best interests of the estate, and *that the estate is bound by said instruments*." There was no appeal from that probate court order.

Meanwhile, in chancery court, the FDIC began a foreclosure proceeding. On September 11, 1985, the 160 acres was ordered sold to satisfy the debt. Appellee, Kennedy Well Works, Inc., purchased the land at a fair price of $61,000.00, and received a commissioner's deed to the 160 acres.

On July 27, 1987, appellant Warren Brown, son of Odene Brown and consequently a remainderman under his grandfather's will, filed this complaint in the chancery court asking that the commissioner's deed to appellee be set aside and that title be quieted in the Howard Bone Trust. The trial court declined to set aside the deed because the note and mortgage were evidence of a just debt of the estate and the 160 acres "never passed into the testamentary trust set forth in Howard Bone's will, since the will provided that all just debts were to be paid and only the rest and residue of the estate was to pass into the testamentary trust."

Appellant assigns this ruling, among others, as error. The chancellor was correct in his ruling, and the ruling is dispositive of the case. Ark. Code Ann. § 28-49-101(b)(1) (1987) provides:

> Real property shall be an asset in the hands of the personal representative . . . when the court finds that the real property should be sold, mortgaged, leased, or exchanged for any purpose enumerated in § 28-51-103, irrespective of

whether any personal property of the estate, other than money, is available for such purpose.

Ark. Code Ann. § 28-51-103(a) (1987) provides:

(a) Real or personal property belonging to an estate may be sold, mortgaged, leased, or exchanged under court order when necessary for any of the following purposes:

(1) For the payment of claims;

The probate court found that the attorney's fee, which was evidenced by the note and secured by the mortgage, was a just debt of the estate. There was no objection to that order, and no appeal from it. There was no proceeding in probate court to set it aside.

The appellant argues that the chancery court, which heard this case to set aside the commissioner's deed, should have afforded "no weight" to the probate court order because it was erroneously decided. The asserted errors of the probate court are (1) failure to require a proper claim form and (2) admitting parole evidence. In short, appellant sought to collaterally attack the probate court order in chancery court. The chancery court correctly ruled against such an attack.

We have long held that where a probate court has jurisdiction of the subject matter, its judgment, although erroneous, is conclusive, so long as not reversed, and cannot be attacked collaterally. *Sharum* v. *Meriwether*, 156 Ark. 331, 246 S.W. 501 (1923); *Carraway* v. *Moore*, 75 Ark. 146, 86 S.W. 993 (1905); and *Currie* v. *Franklin*, 51 Ark. 338, 11 S.W. 477 (1888), citing *Redmond* v. *Anderson*, 18 Ark. 449 (1857); In *Levinson* v. *Treadway*, 190 Ark. 201, 78 S.W.2d 59 (1935), we wrote: "[P]robate courts are superior courts within the limits of their jurisdiction and where, as in this case, jurisdiction is had of the subject-matter, a judgment of such court is impervious to collateral attack. This doctrine is so well settled by numerous decisions of this court that a citation of authorities is deemed to be unnecessary." Further, chancery courts have subject matter jurisdiction to grant relief from judgment obtained by fraud in probate court only when there is no remedy at law. *Tucker* v. *Leonard*, 228 Ark. 641, 311 S.W.2d 167 (1958). There is an adequate legal remedy for a judgment fraudulently obtained in

probate court. ARCP Rule 60(b) and (c)(4), provide that a probate court may vacate an order which has been obtained by fraud. Thus, the chancery court does not have authority to vacate a probate court order, even when the probate court order is obtained by fraud. *Tucker* v. *Leonard, supra.* In the chancery court case at bar, the appellant did not contend that the probate court was without jurisdiction, or that jurisdictional notice was not given. *See* Ark. Code Ann. § 28-40-101 (1987). Thus, the chancery court's refusal to set aside the probate court's finding that the promissory note was evidence of an estate debt was a correct ruling. The appellant argues that the probate court order was the result of a "staged performance to introduce parole evidence." Even assuming that constitutes fraud, the chancery court was without jurisdiction to set aside the probate order. Thus, the chancery court correctly followed the probate court and held that the note was evidence of a just estate debt and that, accordingly, the 160 acres never passed into the testamentary trust, since the will provided that all just debts were to be paid and only the residue would pass into the trust.

■ The chancellor gave two additional reasons for denying relief to the appellant, and both of them are assigned as error. However, since we affirm the Chancellor for the first reason he gave, we need not address the two additional reasons.

■ Lastly, the appellant argues that we cannot give any weight to the findings of fact by the Chancellor since, according to appellant, the Chancellor mechanically adopted the appellee's proposed findings. The argument is without merit for two reasons. First, we are not at all convinced that the Chancellor abandoned his duty to make his own impartial findings of fact. Second, even if he had done so, this case turns on a matter of law, the law of a collateral attack upon a judgment, and the findings of fact make no substantial difference.

Affirmed.