Reverend G. Edward WEST *v.*
Bishop Henry Allen BELIN, Jr.

93-205                                           858 S.W.2d 97

Supreme Court of Arkansas
Opinion delivered July 12, 1993
[Rehearing denied September 13, 1993.]

*Karr, Hutchinson & Stubblefield*, by: *Charles Karr*, for appellant.

*Mays & Crutcher, P.A.*, by: *Richard L. Mays*, for appellee.

TOM GLAZE, Justice. This case arises from a dispute between Reverend G. Edward West, an itinerant elder and member of the African Methodist Episcopal (AME) Church, and Bishop Henry Allen Belin, who presided over the Twelfth Episcopal District (Arkansas and Oklahoma) of the AME Church. The AME Church is a hierarchical church with the power of the church reposed in its bishops with the highest judicial body being the Judicial Council. The church's organizational structure and

authority of its various governmental divisions are contained in its Book of Discipline.

On June 6, 1990, West brought suit in Sebastian County Chancery Court against Bishop Belin, alleging Belin had violated AME Church doctrine as interpreted by the Judicial Council and the neutral principles of law by (1) threatening to remove West from all offices he holds in the church and (2) collecting, receiving or obtaining monies not provided for in the General Budget of the AME Church. On June 6, Chancery Judge Don Langston issued an ex parte temporary restraining order (TRO), finding he had jurisdiction and prohibiting Belin from removing West from any office and from obtaining monies as charged in West's verified complaint. This TRO was served on Belin on June 27, 1990. On July 17, 1990, Belin moved to dismiss West's action stating (1) the court had no jurisdiction since AME is a hierarchical church, (2) West had failed to exhaust his remedies within the ecclesiastical courts of the AME Church, and (3) the AME Church was a necessary party and had not been named or served.

West next took action on August 8, 1990, by filing a petition citing Belin to show cause why he should not be held in contempt for violating the court's June 6 TRO. In his petition, West alleged that, on December 13, 1989, the AME Judicial Council had issued its Declaratory Decision whereby persons (bishops) taking actions that violate the General Budget of the AME Church may subject those persons "to charges and/or civil lawsuit." West further asserted Belin violated the Council's Declaratory Decision and the court's TRO by receiving offerings taken at annual church conferences. Belin again responded, stating the chancery court had no jurisdiction over religious tribunals or their decisions.

Chancellor Langston held a hearing on West's petition on December 11, 1990, and Belin appeared only through counsel. The chancellor again found he had jurisdiction of the cause, found Belin was in contempt of the court's June 6 TRO, sentenced Belin to thirty days in the detention center, fined him $1,000.00, but gave Belin forty days within which he could appear and purge himself of any contempt. Judge Langston directed that if Belin failed to respond, a body attachment order would issue for his arrest and incarceration. Belin failed to respond to the judge's

admonition, so an order was required and subsequently signed by Chancery Judge John VanWinkle and issued on August 28, 1991. We note that at this stage of the litigation below, Belin either elected not to appeal the chancery court TRO or contempt order or he failed to lodge a timely appeal from them. However, on December 23, 1991, Judge VanWinkle made another attempt to encourage Belin to respond to court directives by issuing another order directing him to surrender, and if he failed, Belin would be assessed $100.00 per day until he did surrender. Belin appealed that December 23 order, but through new counsel, he also filed a motion on April 15, 1992, requesting the court to vacate its earlier December 11, 1990 contempt order.

While Chancery Judge Charles Garner (the third chancellor involved in the proceeding) denied Belin's April 15, 1992 motion to vacate the December 11 order, he later held a hearing to dissolve the court's June 6 TRO, and after hearing evidence and argument, entered an order dated July 21, 1992, which not only set aside the TRO, but also "all proceedings, pleadings, motions, findings and orders."[1] Judge Garner held he had no subject matter jurisdiction because the parties' dispute involved religious doctrines and practices over which civil courts have no authority, and West had failed to pursue remedies available within the AME Church. Relying upon the July 21 order, Belin subsequently asked the chancery judge to dismiss any pending appeals and to refund the $5,000.00 supersedeas bond he had posted in connection with those appeals. The judge granted Belin's requests, and West appeals from the lower court's July 21, 1992 order.

For reversal, West contends the trial court erred in dismissing his suit for lack of subject matter jurisdiction. He argues the chancery judges had initially determined chancery court had jurisdiction when issuing the TRO, the December 11, 1990 order finding Belin in contempt and the August 28, 1991 order directing Belin to be arrested and incarcerated. Because Belin failed to lodge a timely appeal from these orders, West concludes Judge Garner was procedurally barred by law of the case from raising the jurisdiction issue in the later July 24, 1992 proceeding.

---

[1] Belin appealed the chancellor's denial of the motion to vacate.

We first mention *Potter* v. *Easley*, 288 Ark. 133, 703 S.W.2d 442 (1986), upon which West relies. There, this court stated that the doctrine of the law of the case requires us to adhere to our decision on the first appeal even though we might think it to have been wrong. *Potter* hardly applies here since no appeal had been taken from any of the three above-described orders. Other cases cited by West also involve situations where a prior appeal had been lodged and decided and are similarly inapposite to the facts before us now. In short, West offers us no cases where the doctrine of law of the case has been applied by this court when no appeal was involved.

■ While we find no merit in West's law-of-the-case argument, the question still looms as to whether Judge Garner had the power to set aside all orders previously issued by the chancery court, including the three mentioned hereinabove which had been entered for more than ninety days and from which no appeal was taken. We have held frequently that the trial court loses the power to act under ARCP Rule 60(b) after ninety days from the filing of the judgment, decree or order with the clerk. *City of Little Rock* v. *Ragan*, 297 Ark. 525, 763 S.W.2d 87 (1989); *Diebold and First Nat'l Bank of Wynne* v. *Myers General Agency, Inc.*, 292 Ark. 456, 731 S.W.2d 183 (1987).

■■ Clearly, this court has held that a trial court retains jurisdiction to modify or vacate an injunction beyond the time limit placed on other types of orders or decrees. *Carter* v. *Colson*, 228 Ark. 629, 309 S.W.2d 328 (1958); *Haberman* v. *Van Zandvoord*, 1 Ark. App. 203, 614 S.W.2d 242 (1981).[2] Thus, Judge Garner possessed authority to vacate the chancery court's June 6, 1990 TRO even though it had been entered for more than ninety days. *See* ARCP Rule 65(c). He heard the case on its merits and determined the proof did not support injunctive relief against Belin, and accordingly, he dissolved the court's TRO. In this respect, we note that, while the grant or denial of injunctive relief is within the jurisdiction of chancery court, the findings and

---

[2] When *Carter* was decided, the controlling law was that a trial court had no authority to receive a judgment after the court's term had expired. The term of court was later changed to ninety days and is now incorporated in ARCP Rule 60(b). *See City of Little Rock* v. *Ragan*, 297 Ark. 525, 763 S.W.2d 87 (1989).

conclusions of law made at the preliminary hearing, at which the TRO was granted, are not binding at the trial on the merits. *Patterson* v. *Masem*, 774 F.2d 251 (8th Cir. 1985). Because West challenges the lower court's decision based upon law of the case and not on its merits, we affirm that part of Chancellor Garner's decision that the evidence presented failed to support continuing injunctive relief.

Finally, we must still consider whether Judge Garner had the power to set aside the chancery court's December 11, 1990 contempt order and August 28, 1991 body attachment order. Undisputedly, both orders were well outside ninety days from their having been filed, and Belin appealed neither order.

We are first met with the general rule that a judgment entered without jurisdiction of the person or the subject matter or in excess of the court's power is void and may be collaterally impeached. *Wood* v. *Goodson, Judge*, 253 Ark. 196, 485 S.W.2d 213 (1972). In *Wood*, this court granted a writ of certiorari and held the Miller County Circuit Court had no power to prohibit the news media from publishing that which transpires in open court and ruled an order prohibiting Wood from publishing a trial verdict was void. This court also vacated contempt orders against Wood holding in effect that Wood could not be held in contempt for disregarding a void order.

The case at hand is unlike *Wood*. As discussed earlier, because this cause involved West's request for injunctive relief, Chancellors Langston, VanWinkle and Garner retained jurisdiction throughout these proceedings until it could be decided whether chancery court had jurisdiction to grant the injunctive relief requested by West. In other words, this case is not one where the court is wholly without jurisdiction to grant the relief sought. *See Liles* v. *Liles*, 289 Ark. 159, 711 S.W.2d 447 (1986); *Brown* v. *Kennedy Well Works, Inc.*, 302 Ark. 213, 788 S.W.2d 948 (1990).

A court having equity powers may be given jurisdiction to decide its own jurisdiction as any other court may be given such power. However, if a court has equity powers, it may have the additional authority to preserve the status quo by way of an injunction, so that its jurisdiction to decide its own jurisdiction is preserved. *See* Prof. Don B. Dobbs, Law of Remedies § 2.7

(1973). The case of *United States* v. *United Mine Workers*, 330 U.S. 258 (1947), illustrates this principle quite well. There, the government was operating coal mines during difficulties associated with World War II. It had a contract with the Mine Workers Union, headed by John L. Lewis. Lewis took the position that the union could terminate the contract, and that if a new contract of his liking was not signed, he would call a strike. The government sought a declaratory judgment to the effect that the union could not terminate the existing contract, and it obtained a temporary restraining order to prevent Lewis from calling or supporting a strike. Lewis and his union violated the TRO and later were cited for contempt of court for doing so. Lewis and the union defended on the ground that the court lacked any jurisdiction to issue any injunction in the case, that its order was void and therefore obedience was not required and disobedience could not be punished. Lewis relied on the Norris-LaGuardia Act, which virtually eliminated federal court jurisdiction to issue any restraining order in any case involving or growing out of any labor dispute. The Supreme Court rejected Lewis's defenses and upheld the fines imposed by the lower court upon finding Lewis in contempt. One of the Court's grounds for upholding the lower court's contempt orders was that "the District Court unquestionably had the power to issue a restraining order for the purpose of preserving existing conditions pending upon its own jurisdiction." In other words, since the district court had the power to decide its own jurisdiction, it also had the power to make its decision effective, or at least to keep the way open for a meaningful decision. *See* Dobbs, Law of Remedies § 2.7 at page 87; *see also Chicot County Drainage Dist.* v. *Baxter State Bank*, 308 U.S. 371 (1940).

■ As mentioned above, Chancellor Langston assumed jurisdiction of West's complaint and issued a TRO to prevent Belin from violating AME Church Doctrine by threatening removal of West from office and from obtaining monies not provided in the church's General Budget. While the general rule is that religious controversies are not a proper subject for inquiry by civil courts, and that ecclesiastical decisions of church tribunals are binding on a civil court, *Serbian Eastern Orthodox Diocese* v. *Milivojevich*, 426 U.S. 696 (1976), where the controversy involves issues of ownership in church property, the state

has an obvious and legitimate interest in providing a forum in which these disputes can be peacefully resolved, so long as the resolution by the court does not involve consideration of any doctrinal matters. *Jones v. Wolf*, 443 U.S. 595 (1979). If the property issue can be resolved by an approach based on neutral principles of law, the constitutional principles of the First and Fourteenth Amendments regarding separation of church and state are not violated. *Id. See also Gipson v. Brown*, 288 Ark. 422, 706 S.W.2d 369 (1986); *Gipson v. Brown*, 295 Ark. 371, 749 S.W.2d 297 (1988).

In his complaint and petition, West related factual allegations that Belin had improperly obtained monies in violation of AME Church Doctrine as interpreted by the Judicial Council and that neutral principles of law had been violated as well. In addition, he alleged administrative remedies had been pursued within the church and his remedy was now at law in the civil courts.[3]

In sum, we hold that Chancellor Langston had the power to issue the June 6 TRO for the purpose of preserving existing conditions until the court decided its own jurisdiction in this matter. Accordingly, the court's contempt order issued as a result of Belin's violation of that TRO is valid. Judge Garner simply had no power to set aside the contempt orders that Belin never properly challenged. Although given every opportunity by the chancery judges to present his case and to purge himself of any contempt, Belin ignored the pending proceeding with impunity. He was wrong to do so. Any relief to Belin from the chancery court's contempt and body attachment orders must result from the chancery court's discretion not to enforce the dictates of those orders since Judge Garner was without authority to set them aside.

---

[3] The AME Book of Discipline provides under the duties of the Judicial Council the following:

> h. Members . . . are hereby required to seek a final determination of any dispute arising between said members and the church and/or any department thereof by exhausting all legal remedies provided in the Discipline before civil proceedings are engaged in by the said member in his/her own behalf or any one similarly situated.

From the foregoing, we affirm in part and reverse and remand in part.

BROWN, J., concurs in part and dissents in part.

ROBERT L. BROWN, concurring in part and dissenting in part. I agree with that part of the majority's opinion affirming the lack of jurisdiction of the first chancellor over ecclesiastical matters. I question, though, whether we should uphold the contempt sanction against the appellee, thereby affirming a fine and jail sentence, when the first chancellor lacked jurisdiction over this matter. I further question whether we should reverse part of the third chancellor's order based on a legal theory that was not argued at trial or to this court on appeal.

The majority is correct, as a general proposition, that a trial court retains the power to enforce a TRO by contempt sanctions pending a determination of its own jurisdiction over the subject matter. *See United States* v. *United Mine Workers of America,* 330 U.S. 258 (1947); *Hayes* v. *Towles,* 95 Idaho 208, 506 P.2d 105 (1973). But that proposition appears not to be applicable in this case since the TRO which resulted in the contempt citation was not issued to allow the first chancellor to decide jurisdiction. Indeed, the court said it had jurisdiction in the order. The stated reason for the TRO was to keep Bishop Belin from removing Reverend West from office or obtaining church money.

Decades ago, this court said in discussing contempt sanctions for violating preliminary or permanent injunctions: "However, when the pleadings show on their face that the court is wholly without jurisdiction of the subject matter set forth therein, any preliminary order made or final judgment rendered is void." *Pitcock* v. *State,* 91 Ark. 527, 534, 121 S.W. 742, 745 (1909). In 1968, the California Supreme Court held that where the trial court acted in excess of its jurisdiction in issuing the TRO, violation of the void order should constitute no punishable wrong. *In Re Berry,* 65 Cal. Reptr. 273, 436 P.2d 273 (1968).

More importantly, I do not believe that the law surrounding this issue is so crystal clear that we should decide the question without giving counsel an opportunity to argue the point. The majority is saying that the first chancellor had jurisdiction only to issue the TRO and then enforce the order through contempt

sanctions; otherwise, he lacked jurisdiction over the subject matter. The majority is also saying that the third chancellor who voided the first chancellor's contempt order lacked the power to do so. I do not, however, perceive a lack of subject matter jurisdiction in the third chancellor to rule on the question which would entitle us to raise the issue on our own. Can we, then, reverse the third chancellor on a point not argued? I do not think so.

It has become a legal maxim that we will not entertain arguments not made below. *See, e.g. Johnson* v. *Ramsey,* 307 Ark. 4, 817 S.W.2d 200 (1991); *Smith* v. *City of Little Rock,* 305 Ark. 168, 806 S.W.2d 371 (1991). We should decline to do so in this case.