506 P.2d 105

Bobby L. HAYES, Plaintiff,

v.

James G. TOWLES, District Judge,
Defendant.

No. 11099.

Supreme Court of Idaho.

Feb. 9, 1973.

David A. Frazier, Coeur d'Alene, for plaintiff.

James G. Towles, District Judge, Wallace, pro se.

DONALDSON, Chief Justice.

This original proceeding was initiated by the petitioner, Bobby L. Hayes, who filed in this Court an application for a writ of review of an order of the District Court of the First Judicial District, Shoshone County, whereby the petitioner was adjudged guilty of contempt of court. This Court granted the petitioner's application and subsequently issued the requested writ.

In·April, 1958, the petitioner's then wife Wanda Hayes filed a divorce complaint in which, *inter alia,* she prayed for judgment "[r]equiring the defendant [Bobby L. Hayes] *to pay to plaintiff for the support* of the minor children of the parties the sum of $80.00 per month beginning the 1st day of May, 1958, and continuing until said children reach the age of 18 years or until plaintiff shall remarry under such circumstances as said payments shall become unnecessary for the support of said children." Having been served with process, Bobby Hayes failed to appear, answer, or plead; and the district court therefore declared him in default on May, 12, 1958. On that same day, the court entered findings of fact and conclusions of law which, *inter alia,* required "that defendant pay to plaintiff for the support of the minor children of the parties the sum of $80.00 per month beginning the 1st day of May, 1958, *and continuing until said children reach the age of 18 years or until plaintiff shall remarry under such circumstances as said payments shall become unnecessary for the support of said children.*" Emphasis added. Also filed on May 12 was a default decree of divorce which, *inter alia,* "required [defendant] to pay to plaintiff for the support of the minor children of the parties the sum of $80.00 per month, the first payment to be made immediately upon receipt of this order and subsequent payments to be made thereafter on the first day of each month beginning June, 1958." Thus, although the findings and conclusions conformed to the prayer for child support contained in the complaint, and although by its own terms the decree purported to be "in accordance with said Findings of Fact and Conclusions of Law," a variance nevertheless existed between the language of the decree, on the one hand, and the language employed in both the complaint and the conclusions of law on the other—in that the decree failed to specifically provide that the defendant's child support obligation would continue only "until said children reach the age of 18 years or until plaintiff shall remarry under such circumstances as said payments shall become unnecessary for the support of said children."

Subsequent to the entry of the divorce decree, Wanda Hayes, on two occasions in 1958 and 1959, attempted to collect delinquent child support by execution proceedings. Thereafter, Bobby Hayes was absent

from the State of Idaho until March, 1967. In October, 1959, Wanda Hayes remarried, becoming Wanda Hayes Ryan. From 1959 to 1971, Bobby Hayes expressed the belief that under the terms of their divorce decree, Wanda's remarriage had terminated his obligation to pay child support; he did not, however, at any time request a hearing to determine whether Wanda had remarried *under circumstances rendering the child support payments unnecessary*. (The children at all times herein pertinent were under the age of eighteen.)

The litigation culminating in the challenged contempt order began when, on January 26, 1972, Wanda Hayes Ryan petitioned the district court for an order directing the issuance of execution against the property of Bobby Hayes. On the same date, the requested writ was issued in order to satisfy delinquent child support payments. At the same time, the court issued an order to show cause and an "order in proceedings supplementary to execution," which "restrained [Bobby Hayes] from selling or otherwise disposing of or encumbering any money or property not exempt from execution."

Pursuant to the order to show cause issued on January 26, a hearing was held on January 31, 1972, at which Bobby Hayes appeared in person but without counsel. At this hearing, the court discovered the discrepancy between the language used in the 1958 divorce complaint and that employed in the default decree finally entered in the case. The court suggested to Bobby Hayes that he consult an attorney and continued the matter to allow him to do so. Before adjourning on January 31, however, the court dissolved the writ of execution previously issued, but the court continued in effect the order restraining Bobby Hayes from disposing of any assets. Immediately upon reconvening on February 29, 1972, the court, sua sponte, amended the divorce decree *nunc pro tunc* to conform with the prayer for child support contained in the complaint; in doing so, the court relied upon I.R.C.P. 60(a)[1], which provides for the correction of clerical mistakes and errors arising from oversight or omission. Then, after hearing the testimony of Bobby Hayes on February 29, the court suggested that contempt proceedings be initiated against him for violating the court's order restraining him from disposing of or encumbering any property not exempt from execution. On March 27, 1972, the court entered a memorandum decision finding that child support payments had not become "unnecessary" under the circumstances of Wanda Hayes' remarriage; hence, the court again ordered that execution issue to satisfy delinquent child support payments.

On April 7, 1972, a hearing was conducted on the contempt matter. The court found that immediately after the hearing of January 26, 1972, a "drastic change" occurred in Hayes' normal habits, with the result that within a week or two of the January 26 hearing every asset, except for an automobile and two checks, had disappeared for one reason or another. More specifically, the court found that Bobby Hayes had dissipated his checking account, transferred certain shares of stock, and lost substantial sums of money on horse racing wagers. The court therefore entered an order adjudging Bobby Hayes guilty of contempt.

The petitioner does not contend that he did not, in fact, violate the restraining order issued by the district court. Rather, he argues as follows: (1) the default decree of divorce granted relief in excess of that prayed for in the demand for judgment;

---

1. "Rule 60(a). *Relief from judgment or order—Clerical mistakes.*—Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the Supreme Court or the district court, as the case may be, and thereafter while the appeal is pending may be so corrected with leave of the Supreme Court or district court, as the case may be."

(2) under I.R.C.P. 54(c), the court was without jurisdiction to enter a default judgment which differs in kind from or exceeds in amount that prayed for in the demand for judgment; (3) the default decree is therefore void insofar as it pertains to child support; (4) hence, the January 26 writ of execution and the order in proceedings supplementary thereto are void, since they are based upon a void judgment; (5) thus, also void is the restraining order originally issued as part of supplementary proceedings and subsequently continued in effect by court order; and (6) the violation of a void order does not constitute contempt.

A judgment by default may not differ in kind from or exceed in amount that prayed for in the plaintiff's demand for judgment. I.R.C.P. 54(c). The district court is without jurisdiction to enter a default judgment which differs in kind from or exceeds in amount that demanded in the prayer of the complaint. Cobb v. Cobb, 71 Idaho 388, 390, 233 P.2d 423 (1951); Sonleitner v. McLaren, 52 Idaho 791, 794, 20 P.2d 1014 (1933). If, through judicial error, a default judgment exceeds the demand of the complaint, the *excess* is void. McHan v. McHan, 59 Idaho 496, 506, 84 P.2d 984 (1938); Mason v. Pelkes, 57 Idaho 10, 19, 59 P.2d 1087 (1936), cert denied, 299 U.S. 615, 57 S.Ct. 319, 81 L.Ed. 453 (1937); Stablein v. Stablein, 59 Wash.2d 465, 368 P.2d 174 (1962); *see* Wright v. Atwood, 33 Idaho 455, 461, 195 P. 625 (1921). However, where, through clerical error, oversight, or omission, a default judgment exceeds the demand of the complaint, no part of the judgment is void; rather, the judgment is subject to correction under I.R.C.P. 60(a), which in pertinent part provides: "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." Bowles v. Branick, 66 F.Supp. 557 (W.D. Mo.1946); *cf.* Silas v. Paroh Steamship

Co., 175 F.Supp. 35 (E.D.Va.1958), vacated on other grounds sub nom. World Carriers, Inc. v. Bright, 276 F.2d 857 (4th Cir. 1960); Anderson v. Brady, 6 F.R.D. 587 (E.D.Ky.1947). In Bowles v. Barnick, *supra*, the complaint alleged actual damages of $70 and requested recovery of treble damages; a default judgment was entered which, because of an error in computation, awarded damages of $270 instead of $210. Upon the defendant's motion to vacate or set aside the default judgment, the court held that the judgment should be corrected by a *nunc pro tunc* order.

In the case at bar, the nonconformance of the decree to the prayer of the complaint arose from oversight or omission. It is obvious that in rendering its decree, the district court intended to specifically provide that the defendant's child support obligation would continue only "until said children reach the age of 18 years or until plaintiff shall remarry under such circumstances as said payments shall become unnecessary for the support of said children." The provision for child support contained in the findings of fact and conclusions of law so provided; the language employed there was identical to that used in the prayer of the complaint. The decree itself recites that it is "in accordance with" the findings and conclusions. The inadvertent omission of the limitation on the duration of child support was the type of error which could be corrected under I. R.C.P. 60(a). Jackson v. Jackson, 107 U. S.App.D.C. 255, 276 F.2d 501, 502–503 (1960), cert. denied, 364 U.S. 849, 81 S.Ct. 94, 5 L.Ed.2d 73 (1960); Barron & Holtzoff, Federal Practice and Procedure § 1324 (1958). In *Jackson,* the district court had stated orally in open court its intention to condition the payment of child support upon the presence of the children within the jurisdiction. This condition was, however, omitted from the judgment entered. Subsequently, the district court corrected this omission by supplying the provision that child support had to be paid only when the children were in the jurisdiction. The Court of Appeals held that the omis-

sion of the limitation on child support payments could properly be corrected under Rule 60(a), since that rule allows the correction of errors arising from oversight or omission.

The petitioner's argument must, therefore, fail, since the default divorce decree is not void insofar as it pertains to child support, as contended by the petitioner. The default decree is not subject to vacation for voidness but only to correction for error arising from oversight or omission. Thus, even if one assumes—as does the petitioner—that the validity of the restraining order violated by him depends upon the validity of the original divorce decree, the contempt citation still must be sustained.

 It is our opinion, moreover, that the validity of the restraining order did not depend upon the validity of the original divorce decree. The order violated by the petitioner was in the nature of a temporary restraining order issued pending a determination of jurisdiction. In general, a court has the power to order the preservation of the status quo while it determines its own authority to grant relief, and the violation of a restraining order issued for that purpose may be punished as criminal contempt, even if the court subsequently determines that it is without jurisdiction to grant the ultimate relief requested. United States v. United Mine Workers of America, 330 U.S. 258, 290–293, 67 S.Ct. 677, 91 L.Ed. 884 (1947); United States v. Shipp, 203 U.S. 563, 573, 27 S.Ct. 165, 51 L.Ed. 319 (1906); Smotherman v. United States, 186 F.2d 676, 678 (10th Cir. 1950); Carter v. United States, 135 F.2d 858, 861–862 (5th Cir. 1943); Pitcock v. State, 91 Ark. 527, 121 S.W. 742, 745 (1909); Leeman v. Vocelka, 149 Neb. 702, 32 N.W.2d 274, 280 (1948); Ohio Contractors Ass'n v. Local 894 of Int. Hod Carriers', Bldg. & C. L. Union of America, 108 Ohio App. 395, 162 N.E.2d 155, 159–160 (1959); Annot., 12 A.L.R.2d 1059, 1078–1079 (1950).

We may assume, without deciding, that at its inception, the restraining order issued by the district court was an inextricable part of proceedings supplementary to a writ of execution issued to enforce the original default divorce decree. Subsequently, however, the court dissolved the writ of execution and, at the same time, continued in effect an order restraining the petitioner from disposing of any assets. At this point, the restraining order was no longer a part of proceedings supplementary to execution; the order could not have been supplementary to an execution which had been dissolved. Therefore, the validity of the restraining order no longer depended upon the validity of the underlying judgment upon which the writ of execution had been based. *Cf.* Nalder v. Crest Corp., 93 Idaho 744, 749, 472 P.2d 310 (1970). The restraining order was continued not in an effort to enforce the prior decree but to maintain the status quo until the court determined whether it had jurisdiction to grant the relief sought—in other words, until the court determined whether there was a valid decree to support execution. As the authorities cited above indicate, the validity of such a temporary restraining order does not depend on whether the court actually has jurisdiction to grant the ultimate relief requested. In this case, the court properly concluded that the default divorce decree was subject to correction but not void; hence, the court corrected the decree and reissued the requested execution. But even if the default divorce decree had been void, and even if, therefore, the district court had no jurisdiction to base an execution thereon, the validity of its restraining order would have been unaffected. Whether the divorce decree was valid or void, the restraining order was valid, and a violation of the order subjected the petitioner to a contempt citation.

Order affirmed. Costs to defendant.

SHEPARD, McQUADE, McFADDEN, and BAKES, JJ., concur.