578 P.2d 676

DeEsta JOHNSON, Plaintiff-Cross Defendant-Appellant,

v.

HARTFORD INSURANCE GROUP and Hartford Life Insurance Company, Defendants and Third-Party Plaintiffs,

v.

DeEsta JOHNSON, as guardian of the Estates of Michael, Billy and Bradley Goodrich, minors, Third-Party Defendants,

v.

David S. JONES, as guardian of the Persons of Michael, Billy and Bradley Goodrich, minors, Jeannie Goodrich, aka Jeannie Goodrich Jones, on her own behalf and as the natural parent and guardian of Michael, Billy and Bradley Goodrich, minors, Third-Party Defendants-Cross Claimants-Respondents.

No. 12623.

Supreme Court of Idaho.

May 3, 1978.

"15.06 The Trainer shall be responsible for the condition of the horse he enters." 507 P.2d at 427–428.

R. M. Whittier, Pocatello, for appellant.

Donald Lojek, of Moffatt, Thomas, Barrett & Blanton, Boise, for respondent, Jeannie Goodrich.

SCOGGIN, Justice Pro Tem.

This case involves a dispute between a grandmother and her grandchildren over proceeds of a life insurance policy on the life of Brent Goodrich who was murdered by his ex-wife. *See State v. Goodrich,* 97 Idaho 472, 546 P.2d 1180 (1976).

Jeannie Goodrich filed her divorce complaint against Brent Goodrich on January 11, 1973. Jeannie's three children from an earlier marriage—Michael, Billy and Bradley—had been adopted by Brent. A default divorce decree entered on February 7, 1973, provided that Brent would retain title to his insurance policies but that he was "required to maintain the children of the parties as beneficiaries of said policies until the youngest child shall come of age." On September 19, 1973, contrary to the provisions of the above decree, Brent changed the beneficiary of his Hartford policy (the one at issue in this case) to his mother, plaintiff-appellant DeEsta Johnson. On October 17, 1973, Jeannie shot Brent Goodrich and he died three days later.

On March 5, 1975, DeEsta Johnson filed a complaint against Hartford for the proceeds of Brent's $10,000.00 group employment life insurance policy. Pursuant to the provisions of I.R.C.P. 22, Hartford tendered the proceeds into court, admitted liability for $20,000.00 due to the policy's double indemnity provision, and interpleaded DeEsta Johnson as guardian of the estate of the three minor children;[1] David S. Jones (Jeannie's new husband) as guardian of the person of the three children; and Jeannie Goodrich on her own behalf and as natural parent and guardian of the three children. Eventually, Hartford was dismissed and Jeannie withdrew all of her own claims, leaving as the real parties in interest DeEsta Johnson and her grandchildren.

1. At oral argument, we were informed that the guardianship of the estate of the remaining minor child had thereafter been changed to Delpha Ames, the child's maternal grandmother.

Trial was held to the court without a jury on February 22, 1977. In his findings of fact and conclusions of law, the district judge found that Brent Goodrich had intended to name DeEsta Johnson as the beneficiary of his policy, but that because such a change was contrary to the provisions of the divorce decree, it was void as a matter of public policy. Relying upon a theory of constructive trust, the trial court held the children to be the true and equitable beneficiaries of the funds tendered into court and judgment was entered accordingly on May 9, 1977.

Mrs. Johnson appeals the judgment in favor of her grandchildren. She argues, basically that Brent Goodrich had legal authority to change the beneficiary on his life insurance policy because the provision in the default divorce decree forbidding such conduct had not been mentioned in the prayer for relief in Jeannie Goodrich's divorce complaint and therefore was itself void and of no effect.[2]

## I.

■ At the outset, respondents challenge Johnson's standing to call into question the provisions of a divorce decree to which she was not a party. It is established law in this jurisdiction, they argue, that a divorce decree of an Idaho court may not be collaterally attacked by a person who was not a party to the underlying action and whose rights did not accrue until after the entry of the judgment being attacked. Reliance for this proposition is placed upon *Bair v. Bair*, 91 Idaho 30, 415 P.2d 673 (1966); and *Treece v. Treece*, 84 Idaho 457, 373 P.2d 750 (1962). In particular, respondents rely upon the *Treece* opinion which quoted approvingly the following language from 49 C.J.S. Judgments § 414, pp. 818–819:

> A stranger to the record, who was not a party to the action in which the judgment was rendered or in privity with a party is

not prohibited from impeaching the validity of the judgment in a collateral proceeding; but in order to do so he must show that he has rights, claims, or interests which would be prejudiced or injuriously affected by the enforcement of the judgment, and which accrued prior to its rendition.

What respondents fail to note, and what the words immediately following the above quotation make clear, is that the prohibition against collateral attack by a party whose interest did not accrue prior to rendition of judgment is the rule which is invoked *"unless the judgment is absolutely void."* *Id.* at 819. These words were omitted by the Court in *Treece*, apparently because they had no application to the facts of that case.

In *Treece*, the appellants, brothers and sisters of the decedent Mr. Bair, attacked the validity of his marriage to the defendant, Mrs. Bair, on the grounds that she had not resided in Idaho for 6 weeks prior to receipt of a divorce decree dissolving her earlier marriage to Treece. Appellants argued that the original divorce decree was therefore void and that the subsequent marriage was likewise void; that as a result, Mrs. Bair was not the decedent's lawful widow; and that they, the brothers and sisters, were Bair's sole surviving heirs at law. The Court held that the brothers and sisters had no standing to bring a direct attack on the underlying divorce decree. *Bair* established further that they could not bring a collateral attack either. In his concurrence in *Bair*, Justice Taylor, who had authored the opinion of the Court in *Treece*, explained that, in Idaho, the residency requirement was not jurisdictional. Thus, the brothers and sisters could not hope to bring themselves within the exception to the general rule because they could not possibly show that the original divorce decree was

---

2. Both sides have assumed throughout this litigation that if the provision in the default divorce decree requiring Brent to name his children as beneficiaries *is* valid, then any attempted change to the contrary was void as against public policy. No authority is cited for this

proposition. Nonetheless, it appears to be correct. *See Great American Reserve Ins. Co. v. Maxwell*, 555 P.2d 988 (Colo.App.1976); *Travelers Ins. Co. v. Lewis*, 531 P.2d 484 (Utah 1975).

"absolutely void." *See Bair v. Bair*, 91 Idaho at 33, 415 P.2d at 676.[3]

■ If, on the contrary, a provision of a divorce decree is void *ab initio*, it may be collaterally attacked at a later date even though the party attacking it had no rights which could be affected at the time of its rendition. In the case of *In re Estate of Pechman*, 532 P.2d 385 (Colo.App.1975), for instance, a son (like the three children in this case) was awarded in the lower court the proceeds of his deceased father's National Service Life Insurance policy despite the father's naming of his second wife as beneficiary, because such a change violated the provisions of a divorce decree. On appeal, the Colorado Court of Appeals reversed. There the estate was able to mount a collateral attack on the divorce decree provision as being void *ab initio* because by federal law, the state divorce court had no power to restrict the right of a policyholder of National Service Life Insurance to change the beneficiary at any time under any circumstances. The rule that emerges from the *Pechman* case, from our own holdings in *Bair* and in *Treece*, and from a reading of the full rule as stated in C.J.S. is that void decrees can be collaterally attacked by strangers to the decree; merely voidable ones cannot unless such a decree prejudices rights which accrued prior to its rendition. It follows that we must reach the merits of Johnson's claim that the insurance provisions of the original default divorce decree are *void* as having violated I.R.C.P. 54(c).

### II.

In the body of the complaint in her divorce action, filed in January, 1973, Jeannie Goodrich laid out, in a single paragraph, the following assets which the couple had acquired during marriage as community property: a small equity in their residence; household goods and furnishings (listed); an encumbered automobile; a tax refund for the year 1972; and "various policies of insurance." The prayer for relief addresses each of the above-mentioned categories of property but, apparently through inadvertence, omits all mention of the insurance policies:

> That plaintiff be awarded the equity in the home, the household goods and furnishings and pay the encumbrances thereon, and one-half of balance of any tax refund after payment of attorney fees herein, and that defendant receive the equity in the auto, his personal effects and belongings and one-half the tax refund after payment of attorney fees herein, and that the defendant be required to pay the outstanding remaining community obligations.

Despite the fact that the insurance policies were not mentioned in the prayer for relief, the default decree ordered that Brent receive as his sole and separate property

> the automobile, his personal effects and belongings, one-half the tax refund after payment of attorney fees, *together with his insurance policies, with the defendant being required to maintain the children of the parties as beneficiaries of said policies until the youngest child shall come of age.* (Emphasis supplied.)

Johnson construes the sequence narrated above as an example of a default decree which exceeds in relief granted that which was requested in the prayer for relief. In such circumstances, according to Johnson, the following rule applies:

> A judgment by default may not differ in kind from or exceed in amount that prayed for in the plaintiff's demand for judgment. I.R.C.P. 54(c). The district court is without jurisdiction to enter a default judgment which differs in kind

---

3. The Court in *Treece* and in *Bair* was also concerned with the peculiar values at stake in that type of case and the policy implications of permitting strangers to a divorce decree to attack that decree and the status it confers:

> The parties to the divorce and others who have since relied on the validity of the decree are entitled to rely thereon and play their lives accordingly without fear that at some future date they will be found to have acted bigamously or that their children will become bastardized. 91 Idaho at 31, 415 P.2d at 674.

from or exceeds in amount that demanded in the prayer of the complaint. [Citations omitted.] If, through judicial error, a default judgment exceeds the demand of the complaint, the *excess* is void. [Citations omitted.] (Emphasis in original.) *Hayes v. Towles,* 95 Idaho 208, 211, 506 P.2d 105, 108 (1973).

In *Hayes* itself, however, the words which follow immediately after those cited to us by appellant Johnson, establish the distinction which is controlling in the present case. After enunciating the general rule that default decrees which grant relief in excess of that prayed for in the demand for judgment are void, the Court noted a recognized exception to the general rule under the radically different set of circumstances,

> where, through clerical error, oversight, or omission, a default judgment exceeds the demand of the complaint. *Id.*

Under such circumstances, the Court concluded that "no part of the judgment is void." *Id.*

■ Thus, while it is true that a violation of Rule 54(c) generally results in a judgment which is void, such is not the case where "the nonconformance of the decree to the prayer of the complaint arose from oversight or omission." *Id.* To hold otherwise would be to lose sight of the policy reasons which underlie the default judgment section of provisions of Rule 54(c):

> The first sentence of Rule 54(c) states that a judgment by default is limited to the relief demanded in the complaint. The theory of this provision is that once the defending party receives the original pleading he should be able to decide on the basis of the relief requested whether he wants to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should he attempt to limit the scope and size of the potential judgment against him by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

10 Wright & Miller, Federal Practice and Procedure § 2663 (1973). In short, the default judgment provisions of Rule 54(c) embody "the essentials of due process and of fair play." *Sylvan Beach, Inc. v. Koch,* 140 F.2d 852, 862 (8th Cir. 1944). In the present case, the values which Rule 54(c) seeks to protect have all been safeguarded. The body of the complaint here put Brent Goodrich on notice that his "various policies of insurance" were among those items which were alleged to be "community property" acquired "during coverture." The body of the complaint went on to request the following disposition of that property, pursuant to what, at all times throughout these proceedings, was alleged to be the mutual agreement of the parties:

> and defendant have the automobile and the insurance policies, the latter subject to the agreement of the parties that the children remain thereon as beneficiaries until the youngest comes of age . . .

During the divorce hearing, Jeannie testified quite extensively regarding each item in the property agreement. Her testimony included the following:

Q. Does he have an insurance program that he can cover the children on?

A. He has a health and accident, yes, through the company.

Q. Has he agreed to pay—

A. He agreed to keep the boys on their health and accident policy.

Q. While he is working there?

A. Yes.

Q. And you have also agreed that he would have reasonable visitation rights after the divorce is granted?

A. Yes. He also agreed, on our insurance policies that we have had in force for nine years, to keep the life insurance policies. He is going to have them transferred; if anything happens to him, it will remain in the boys' names and go into a trust fund for the boys until they are 21.

Q. Is that 21 or until they become of age?

A. He said 21, is what he said. He is setting it up to where if something happened to him, the insurance company would be the guardian and would give them so much a month. There is about $60,000 worth of insurance and they would get the bulk of it when they turned 21.

Later, in summarizing the agreement, Jeannie testified further:

A. He gets the car, which is about five payments or six payments left on it, a '68 Buick Wildcat, and he gets his own personal property.

Q. And his insurance policies subject to the provision you keep the children as beneficiaries?

A. Yes.

The default divorce decree was granted only after it appeared "to the satisfaction of the court that the defendant has been duly and regularly served with summons in said matter and has failed to appear." The decree was never appealed from and, immediately after its entry, all other provisions were faithfully complied with.

We hold that under the narrow circumstances of this case, it would be exalting form over substance to rule that a technical violation of Rule 54(c) rendered the default decree *void*. The Court of Appeal of North Carolina has construed the language of Rule 54(c) to mean that

> where no answer is filed, the relief granted cannot exceed that actually demanded *somewhere in the complaint when considered in its entirety.* (Emphasis added.)

*Meir v. Walton*, 6 N.C.App. 415, 170 S.E.2d 166, 168 (1969). Such a reading is here required if we are to carry out the command of I.R.C.P. 8(f) that "All pleadings shall be so construed as to do substantial justice." This mandate applies to pleadings in default cases as well and they are "to be construed no more restrictively than pleadings suggestive of other judgment." *Royal Furniture Co. of Baton Rouge v. Benton*, 260 La. 527, 256 So.2d 614, 616 (1972).

Since the defect in the proceedings below was not such as to make the default divorce decree "absolutely void," it follows

that appellant Johnson is without standing to challenge it. The judgment of the trial court awarding the proceeds of the Hartford policy to the three children of the decedent Brent Goodrich is affirmed. Costs to respondent.

SHEPARD, C. J., and McFADDEN and DONALDSON, JJ., and THOMAS, District Judge, concur.