795 P.2d 903

**Alfred J. NICKELS,**
**Plaintiff–Respondent,**

**v.**

**Ernest F. DURBANO,**
**Defendant–Appellant.**

**No. 17727.**

Court of Appeals of Idaho.

July 19, 1990.

Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for defendant-appellant. B. Newal Squyres, Jr., argued.

R. Jeff Stoker, Twin Falls, for plaintiff-respondent.

SWANSTROM, Judge.

This appeal is from a district court order denying a defendant's motion to set aside a default judgment. The issues we address

include whether the defendant was entitled to notice under I.R.C.P. 55(b)(2) of plaintiff's application for a default judgment and whether the district court abused its discretion in denying defendant's motion for relief from the judgment under I.R.C.P. 60(b)(1). For the following reasons, we affirm in part and vacate in part.

Ernest Durbano of Ogden, Utah, sold an antique aircraft to Alfred Nickels of Twin Falls, Idaho. A purchase contract was signed in Idaho October 1, 1987 when Nickels took possession of the aircraft and paid $10,000 toward its purchase price. The balance of $60,000 was to be paid October 15, 1987. The contract recited that the used aircraft was being sold without warranty, express or implied.

Nickels refused to pay the balance due, contending that he learned the aircraft had been misrepresented, that it had restrictions placed on it by the Federal Aviation Administration which prohibited certain use of the aircraft, and that the aircraft was not mechanically fit for flying. Durbano refused to rescind the contract. For several months the parties attempted to reach a settlement. Their negotiations were unsuccessful.

On April 5, 1988, Durbano filed suit against Nickels in the United States District Court for the district of Utah seeking damages for breach of the contract and for return of the aircraft. Two days later, Nickels filed suit against Durbano in the district court of the State of Idaho seeking rescission of the contract. Nickels was served with summons in the federal case on April 8. On April 13—with the aid of Utah counsel—he filed a motion to dismiss with a special appearance to challenge the jurisdiction of the federal court over his person. On April 18, Durbano was served with summons and a copy of Nickels' complaint in the Idaho case.

On May 2, the federal court notified the parties that it would allow Durbano sixty days to take depositions before the court ruled on the question of its jurisdiction over Nickels. While this issue was pending, and without giving notice to Durbano, Nickels moved for Durbano's default in the

Idaho case because no appearance had been made. On May 16 Nickels was granted a default judgment. The Idaho court awarded damages and attorney fees to Nickels totalling approximately $35,000. The judgment was entered May 18 and the record shows that the clerk mailed a copy to Durbano the same day. The time for appeal—forty-two days—expired June 29.

On July 11, Durbano filed his motion under I.R.C.P. 60(b)(1) to set aside the default judgment on the grounds of "mistake, inadvertence, surprise or excusable neglect."

In an affidavit supporting the motion, Durbano's Utah counsel asserted that immediately after Durbano was served in the Idaho action, he contacted Nickels' Idaho counsel and discussed the pending Idaho action. Durbano's counsel claimed that based upon these conversations, an understanding existed between the two attorneys that if the federal action was dismissed for lack of jurisdiction the parties would then proceed to litigate the Idaho case. Durbano's counsel also asserted that he reasonably believed the Idaho action would remain dormant until the issue of jurisdiction had been decided in the federal action. Due to this belief, Durbano did not contest the jurisdiction of the Idaho action or file any other responsive pleadings. The Idaho district court rejected Durbano's arguments and denied his motion to set aside the default judgment. The court concluded that Durbano's neglect was not "excusable."

In general, the decision to grant or deny a motion to set aside a default judgment is committed to the sound discretion of the district court. The decision will not be disturbed on appeal absent a showing of an abuse of discretion. *Hearst Corp. v. Keller*, 100 Idaho 10, 592 P.2d 66 (1979). Rule 55(c), I.R.C.P., provides for setting aside a default "for good cause shown." A default judgment may be set aside under Rule 60(b)(1) when the judgment has been entered because of "mistake, inadvertence, surprise or excusable neglect." Excusable neglect is conduct that might be expected of a reasonably

prudent person under the same circumstances. "The requirement of reasonable prudence extends not only to a party's initial response upon being served process but also to his subsequent efforts to get the default judgment set aside." *Clark v. Atwood*, 112 Idaho 115, 117, 730 P.2d 1035, 1037 (Ct.App.1986). He must act promptly and diligently in seeking relief. *Id.; Stoner v. Turner*, 73 Idaho 117, 247 P.2d 469 (1952). To set aside a default judgment a party must not only establish one of the grounds for relief under Rule 60(b), but must also plead facts which, if established, would constitute a defense to the original action. *Hearst Corp. v. Keller, supra.*

The standards for appellate review of the decision to deny a motion to set aside default judgment have been set forth in *Avondale on Hayden, Inc. v. Hall*, 104 Idaho 321, 658 P.2d 992 (Ct.App.1983):

> Where oral testimony has been received, we will give due regard to the trial judge's special opportunity to evaluate the credibility of the witnesses. Where the evidence is entirely in writing, we may draw our own impressions from the record, but we will not substitute our impressions for findings of fact by the trial judge unless we are convinced that those findings are clearly erroneous.

*Id.* at 325, 658 P.2d at 996. Furthermore:

> If (a) the trial court makes findings of fact which are not clearly erroneous, (b) the court applies to those facts the proper criteria under Rule 60(b)(1) (tempered by the policy favoring relief in doubtful cases), and (c) the trial court's decision follows logically from application of such criteria to the facts fund, then the court will be deemed to have acted within its sound discretion. Its decision will not be overturned on appeal.

*Id.* at 326, 658 P.2d at 997. *See also Shelton v. Diamond International Corporation*, 108 Idaho 935, 703 P.2d 699 (1985). ▉ A judge is not required to make any findings in ruling on the motion. However, where neither findings nor specific reasons were given for the ruling, the restrained standard of appellate review set forth in *Avondale* does not apply. The

appellate court is at liberty to form its own impressions from the record and to exercise its own discretion in deciding whether the default judgment should have been set aside. *Johnson v. Pioneer Title Co. of Ada County*, 104 Idaho 727, 732, 662 P.2d 1171, 1176 (Ct.App.1983) (review denied). Finally, judgments by default are not favored, and the general rule in doubtful cases is to grant relief from the default in order to reach a judgment on the merits. *Id.*

## I.R.C.P. 55(b)(2): NOTICE OF APPLICATION FOR DEFAULT JUDGMENT

▉ In the district court and in this appeal Durbano has argued that Nickels violated the letter and spirit of I.R.C.P. 55(b)(2) by failing to give him any notice of Nickels' application for a default judgment. Rule 55(b)(2) provides in part:

> If the party against whom judgment by default is sought has appeared in the action, he (or if appearing by representative, his representative) shall be served with written notice of the application for judgment at least three (3) days prior to the hearing on such application.

"A default judgment entered without the requisite three day notice is voidable as it has been irregularly obtained." *Radioear Corporation v. Crouse*, 97 Idaho 501, 503, 547 P.2d 546, 548 (1976). As is apparent from the rule, a prerequisite to the three-day notice is an appearance in the action by the party against whom judgment by default is sought. In Idaho this appearance is not limited to a formal court appearance. The term has been more broadly defined by *Newbold v. Arvidson*, 105 Idaho 663, 672 P.2d 231 (1983). In *Newbold* the defendant visited the plaintiff's attorney at his office and later attended a deposition. Plaintiff's attorney at the deposition acknowledged that defendant was representing himself. Our Supreme Court held that these facts were sufficient to show an appearance for the purposes of I.R.C.P. 55(b)(2). Essentially, the Court has held that "conduct on the part of the defendant which indicates an intent to defend against the action can constitute an appearance within the mean-

ing of the rule." *Catledge v. Transport Tire Company, Inc.*, 107 Idaho 602, 606, 691 P.2d 1217, 1221 (1984) (citing *Newbold*).

Durbano asks this Court to take the "intent to defend" statement in *Newbold* and *Catledge* a step further. He argues that by filing the action in Utah to enforce the sale contract he clearly has indicated his intention to defend against any claim that Nickels had as a result of the transaction. He notes that the parties were actively litigating the case in Utah—albeit over the threshold question of jurisdiction—when his default was taken in Idaho for failing to appear in this action.

We have found no case holding that, where each party to a disputed transaction has filed his own action against the other, in separate courts, one party's pursuit of his own action will constitute "conduct" indicating an intent to defend against the adversary's action so that for the purpose of Rule 55(b)(2) it can be said an "appearance" has been made in the adversary's action.

Durbano has cited *Collex, Inc. v. Walsh*, 74 F.R.D. 443 (E.D.Pa.1977) for this proposition. In August 1974, Collex filed an action in the federal court in Pennsylvania against Walsh over a franchise agreement. Walsh had filed his own action against Collex in the Supreme Court of New York in January 1974 over the same franchise agreement. Walsh had made no formal appearance in the federal action when Collex obtained a default judgment against him on April 1, 1975. Nevertheless, the U.S. District Court later held that Walsh had made an "appearance" in the federal action entitling him to notice of plaintiff's application for a default judgment under F.R.C.P. 55(b)(2).

The court's holding in *Collex* was based on two factors. The court said first that the filing of the action by Walsh in the New York court raising the same issues which would have been the basis for the defense of the federal action, constituted unequivocal notice to Collex of Walsh's intent to defend. Second, the court noted that Walsh, through counsel, participated in two conferences held in chambers of the federal court resulting in a court order establishing procedural time frames and setting a trial date. This, the court said, demonstrated beyond any doubt that all of the parties, and the court, knew the action would be contested. Although the court held that the failure of Collex to give Walsh notice of its application for default judgment rendered the judgment "voidable," the court ultimately concluded on equitable grounds that Walsh was not entitled to have the default set aside. The court did grant Walsh's alternative request for an evidentiary hearing in regard to the *amount* of damages awarded in the default judgment.

In addition to the *Newbold, Catledge,* and *Collex* cases, Durbano relies on *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689 (D.C.Cir.1970) (cited in *Newbold*) and *Carlton L. Davis & Co. P.C. v. Fedder Data Center*, 556 F.2d 308 (5th Cir.1977). In each of these cases, however, the defaulted party had engaged in *some* activity in the action in which the default judgment was obtained.

In *Livermore,* for example, attorneys for the parties exchanged letters discussing some settlement proposals, a conference was proposed, telephone discussions were held, all occurring after suit was filed but before the default judgment was obtained. In the *Carlton L. Davis & Co., Inc.* case, the defendant was represented by two different attorneys. One of the attorneys discovered that through oversight no answer had been filed. He telephoned and wrote plaintiff's counsel indicating an intent to defend and requesting an extension of time to file an answer. Shortly thereafter, plaintiff obtained a default judgment without giving notice of its intent to do so and without responding to defendant's request for additional time. On appeal, the court set the judgment aside, holding that the three-day notice should have been given.

In each of the cases we have examined, some correspondence, participation in proceedings, or discussions acknowledging the existence of a pending legal action which indicate an intent to defend are central to a

holding that an appearance has been made in the action. *See, e.g., Hen House, Inc., v. Robertson,* 410 So.2d 42 (Ala.1982). Other courts hold that "[a]n appearance in an action involves some submission or presentation to the court by which a party shows his intention to submit himself to the jurisdiction of the court." *U.S. Aviation, Inc. v. Wyoming Avionics, Inc.,* 664 P.2d 121, 124 (Wyo.1983). *Accord, Patterson v. Rockwell International,* 665 S.W.2d 96 (Tenn.1984) (defendant's conduct must imply a general appearance, not just one contesting only jurisdiction). *See also R.F. v. D.G.W.,* 192 Colo. 528, 560 P.2d 837 (1977) (defendant's conduct must be sufficient to indicate to the trial court an interest in defending on the merits of the action).

■ In the present case, Nickels' counsel concedes that before Durbano commenced the litigation he had discussions with Durbano's counsel regarding settlement of the underlying dispute. These discussions occurred from October 1987 until March 1988. Durbano's Utah counsel, in an affidavit, states that the discussions between counsel also occurred after Durbano was served with process in the Idaho action, leading to an "understanding" that the question of jurisdiction would be determined in the Utah court before any action would be necessary in the Idaho case. Durbano's counsel produced no records or notations of any such calls. Nickels' counsel adamantly denied that any such conversations or other direct communication had occurred between the filing of the Idaho action and the entry of the default judgment. His affidavit was specific. Durbano had the burden of persuasion on this point. Although the district judge did not specifically address this issue of fact, the judge did find that "the defendants were aware of the Idaho action and did nothing in regard to the Idaho action prior to the entry of the default judgment." We are satisfied that the record supports this finding and we will defer to it.

We conclude that Durbano's conduct did not amount to an "appearance" in the Idaho action. Accordingly, we hold that Nickels was not required to give the three-day notice of intent to obtain a default judgment under I.R.C.P. 55(b)(2).

## DENIAL OF MOTION FOR RELIEF FROM JUDGMENT

■ Durbano argues that the district court failed to make findings sufficient to support the court's discretionary decision. In addition, Durbano contends that the facts meet the Rule 60(b)(1) standards for relief due to a showing of surprise and excusable neglect. Initially, we determine that the district court did fail to make adequate findings in support of its decision. In its findings and order, the district court merely stated that "the facts presented do not establish excusable neglect on the part of [Durbano]." The only reason given by the district court was that Durbano was aware of the pending Idaho action and failed to appear or offer any defense. This can be said of almost every party whose default has been taken. This reason fails to provide an adequate basis for the district court's ruling. Therefore, we will form our own impression from the record and exercise our own discretion in deciding whether the default judgment should have been set aside. *Johnson v. Pioneer Title Co. of Ada County,* 104 Idaho 727, 662 P.2d 1171 (Ct.App.1983).

■ We have already related the facts upon which Durbano relies to show that his neglect—or more properly, the neglect of his attorney—was excusable. In addition, however, Durbano has also asserted "surprise" that Nickels would apply for default without giving him notice and without telling the district judge that the parties were actively litigating—in Utah—the question of the federal court's jurisdiction.

The term "surprise" as used in I.R.C.P. 60(b)(1) really provides no additional reason for vacating the default judgment in this case. "Surprise" in this context is generally defined to be "some condition or situation in which a party to an action is unexpectedly placed to his injury, without any default or negligence of his own, and which ordinary prudence could not have guarded against." *Mid Kansas Federal Savings and Loan Association of Wichita, Kansas*

*v. Burke,* 233 Kan. 796, 666 P.2d 203 (1983). Durbano's "negligence" and his lack of "ordinary prudence" in guarding against the default deprive him of the right to claim "surprise."

We conclude that Durbano has not shown that his mistake in failing to appear and file a responsive pleading was due to "surprise" or "excusable neglect." Accordingly, we do not reach the question of whether Durbano presented a meritorious defense to Nickels' complaint. *See Olson v. Kirkham,* 111 Idaho 34, 720 P.2d 217 (Ct.App.1986).

## DAMAGES AWARDED

■ Finally, Durbano contends that even if the default is not set aside he is entitled to a hearing to redetermine the amount of damages. He asserts that the default judgment entered against him exceeds in amount the demand for judgment in the complaint. Of course, if this contention has merit he is entitled to relief under Idaho case law as well as under the provisions of I.R.C.P. 54(c).

A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.

It has been held that "[t]he district court is without jurisdiction to enter a default judgment which differs in kind from or exceeds in amount that demanded in the prayer of the complaint ... If, through judicial error, a default judgment exceeds the demand of the complaint, the *excess* is void...." *Hayes v. Towles,* 95 Idaho 208, 211, 506 P.2d 105, 108 (1973). (Citations omitted.)

In the present case, Nickels sought recision of the sales agreement. Both Count I and Count II of Nickels' complaint sought "reimbursement" of $10,000 paid on the airplane. Nickels also asked "for expenses incurred in repairing the aircraft and for expenses related to the purchase in the amount of $9,285.41." In addition, he requested "that he be reimbursed for interest on the $19,285.41 accruing from the date that the expenses were incurred." No rate or amount of interest was specified. In Count II Nickels sought damages "equal to storage costs" for storing "rejected goods" (the airplane) in an unspecified amount. In both counts he asked for punitive damages for alleged fraud and misrepresentation. Again, no specific amount was specified. Finally, Nickels made demand for his costs and attorney fees. He alleged that $6,000 would be a reasonable attorney fee which should be paid "in the event of default."

An ex parte hearing was held on May 16, 1988, for plaintiff to submit evidence in support of his unverified complaint. Following the hearing the court signed findings of fact and conclusions of law prepared by Nickels' attorney. The court determined that Nickels was entitled to $726.58 interest on money he had paid on the aircraft. The court awarded $1,600 on the claim for storage costs. The court awarded no punitive damages. The court found that $6,000 was a reasonable attorney fee and awarded that amount plus $75 costs. None of these awards exceeded any specific amounts alleged as damages or demanded in the complaint.

However, as noted, Nickels' complaint specifically alleged entitlement to $19,-285.41 as compensatory damages. This demand in the complaint clearly included the $10,000 which Nickels paid on the purchase price of the aircraft when the sale contract was signed. Nevertheless, inexplicably, the court found that in addition to the $10,000 Nickels "has sustained damages of $16,877.64." This award exceeds the demand of the complaint by $7,592.23. Accordingly, we hold that the judgment as to this amount is void. We conclude that the judgment must be vacated and the case remanded to the district court for a new evidentiary hearing to determine the amount of damages. Durbano shall be entitled to participate in the hearing on remand.

Our order vacating the judgment necessarily includes the award of $6,000 in attorney fees to Nickels. In awarding this amount, the district court made no findings other than stating that the amount was reasonable. Presumably, the award of fees was made under I.C. § 12–120. The court found that the underlying transaction between the parties was a "commercial transaction," but it is unclear whether this was the sole basis for the award.

When awarding fees under I.C. § 12–120, a court is not required to make written findings. *See* I.R.C.P. 54(e)(2). However, I.R.C.P. 54(e)(4) states in part: "Any award of attorney fees in default judgments shall be subject to the other provisions of this Rule 54(e), and shall not exceed the amount prayed for in the complaint." One of the "other provisions," found in Rule 54(e)(3) requires the court to consider eleven specific factors "in determining the amount of such fees: . . . ." We interpret this rule to mean that there is no automatic entitlement to the specific amount of attorney fees claimed in a complaint simply because the defendant has defaulted. Rule 54(e)(5) provides that a "claim for attorney fees as costs shall be supported by an affidavit of the attorney stating the basis and method of computation of the attorney fees claimed." The record on appeal contains no affidavit in support of the claimed fees. The minutes of the ex parte hearing contain no reference to the claim for attorney fees. Finally, the court's findings and conclusions do not indicate that the court considered the enumerated factors of Rule 54(e)(3). Accordingly, we believe that fees, as well as damages, should be redetermined on remand.

Because each party prevails in part we award no costs or attorney fees on appeal.

WESTON, J. Pro Tem, concurs.

BURNETT, Judge,* dissenting in part.

I respectfully disagree with that part of the majority opinion which denies relief from the default judgment under I.R.C.P.

60(b)(1). This question, as my colleagues acknowledge, is one on which we are free to exercise our own discretion—the district court having failed to make findings that would trigger a more deferential standard of appellate review.

As I see it, Durbano's failure to file a pleading in state court, while actively litigating the same contested case in federal court, was an excusable form of neglect. At the very least, I believe this case is laden with doubt about the appropriateness, and fairness, of the default judgment. I would adhere to the general principle that default judgments are disfavored, and should be set aside in doubtful cases, in order to reach decisions on the merits.

---

* Judge Burnett's dissenting opinion was prepared prior to his resignation on July 16, 1990.