OZARK BI-PRODUCTS, INC. *v*. BOHANNON.

5-435                                    271 S. W. 2d 354

Opinion delivered October 4, 1954.

*Crouch & Blair,* for appellant.

*Rex W. Perkins* and *E. J. Ball,* for appellee.

ED. F. McFADDIN, Justice. The Chancery Court, on petition of appellees, permanently enjoined appellant from operating its rendering plant;[1] and on this appeal appellant argues:

(1) "It was error for the Trial Court to permanently enjoin the operation of appellant"; and

(2) "The permanent injunction should be modified so as to permit appellant to operate, if the noxious and offensive odors can be eliminated from its operation, otherwise the injunction to be made permanent."

Northwest Arkansas has developed an extensive broiler industry; and in the slaughtering and processing of the broilers for the market, there is necessarily the problem of the disposal of the offal of the slaughtered fowls. The appellant, Ozark Bi-Products, Inc., is an Arkansas corporation, organized for the operation of a rendering plant to process such offal. The plant was located in the midst of a fairly well populated area in the Oak Grove community, three miles northwest of the City of Springdale; and the appellees are some of the householders near the rendering plant.

Appellant commenced the operation of its plant on May 1, 1953; and on May 22, 1953, appellees filed this suit to enjoin the operation, because the plant emitted noxious odors, attracted flies, etc., and was a nuisance. A hearing was held on July 8, 1953; and resulted in a temporary injunction issued that day, which directed the appellant " . . . to abate said nuisance by refraining from the operation of said plant as alleged in the complaint filed herein." Because of said injunction, the appellant entirely ceased the operation of its plant on July 8th. Then

---

[1] In 17 A. L. R. 2d 1269, there is an Annotation entitled: "Animal rendering or bone boiling plant or business as nuisance."

on August 8th, there was a hearing on the merits of the case, and the temporary injunction was made permanent, and appellant was ordered " . . . to abate said nuisance by refraining from the operation of said plant as alleged in the complaint filed herein."

That the plant, as operated from May 1st to July 8th was a nuisance, seems to be practically conceded: appellant brought the offal to the plant in steel barrels, which were sometimes uncovered, and attracted green flies; some of the offal at the plant was allowed to remain unprocessed until maggots infested it; the processing of the offal by cooking, etc., resulted in extremely noxious odors that affected residents even a considerable distance from the plant.

Appellant's witnesses stated that there were three recognized ways in which to eliminate the noxious odors: (1) water treatment, by which the steam from the cooking vats was run into cool water; (2) burning treatment, by which gas burners destroyed the noxious odors from the boilers; and (3) chemical method, by which the odors were overcome by the use of chemicals put into the boiling vats. Appellant first used the water method, but the odors were terrific. Then, on July 5th, appellant tried the burning method, until July 8th, when the temporary injunction was granted. Appellant claims that the odors after July 5th were not as bad as before, but the appellees' witnesses disputed this. At the trial, the appellant offered to use the chemical method if permitted, and also offered to refuse to accept any material except poultry offal, which could be processed the same day received. As we see the evidence, the water method and the heat method had each proved unavailing at the time of the trial; and the question here presented is whether the appellant should be allowed by *this Court* to try the chemical method, assuming the matter of green flies, maggots, etc., could be eliminated.

Tested by our cases, the rendering plant was not a nuisance *per se,* but was a nuisance because of the manner of operation. In *Swaim* v. *Morris,* 93 Ark. 362, 125 S. W. 432, we quoted from 29 Cyc. 1153:

" 'A nuisance at law or a nuisance *per se* is an act, occupation or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings'."[2]

See also *Terrell* v. *Wright,* 87 Ark. 213, 112 S. W. 211; *Ft. Smith* v. *Western Hide Co.,* 153 Ark. 99, 239 S. W. 724; and *Huddleston* v. *Burnett,* 172 Ark. 216, 287 S. W. 1013.

The usual rule is that if the plant be not a nuisance *per se,* then the injunction should not restrain the entire operation of the plant, but only that part of the operation that created the nuisance. In *Lorenzi* v. *Star Market Co.,* 19 Idaho 674, 115 Pac. 490, 35 L. R. A., N. S. 1142, the Supreme Court of Idaho, supporting its holding by quotations from cases from Mississippi, California and Oklahoma, stated the rule in this language:

"Where a business is not *per se* a nuisance or unlawful, it is always safer for the court to make its injunction only broad enough to prohibit a continuance of the business in such a manner, or under such conditions or circumstances, as to annoy or be offensive to the party aggrieved, and thus leave the matter in such condition that the party offending may, if it is possible or becomes possible, remedy the defect, and take such precaution as to enable him to conduct his business in such a manner as not to be injurious to his neighbor."

To the same effect see also *Sarraillon* v. *Stevenson,* 153 Neb. 182, 43 N. W. 2d 509, 18 A. L. R. 2d 1025; 39 Am. Jur. 444; and the Annotation in 46 A. L. R. 35 on "Extent of Relief" in injunction cases.

Because of the foregoing, the appellant claims that the permanent decree in the case at bar is too broad; but such contention is academic on this appeal, because ap-

---

[2] In *Swaim* v. *Morris* we furthermore said: "Speaking of the latter (livery stable), in *Durfey* v. *Thalheimer,* 85 Ark. 544, 552, this Court, through Judge BATTLE, said: 'A livery stable, even in a city or town, is not necessarily or *prima facie* a nuisance. It may become so by the manner in which it is constructed or conducted.' So we say of a gin. It could be erected and operated at a place and in a manner to become a nuisance, but it might also be erected and operated at a place and in a manner so as not to be a nuisance. It is therefore clearly not a nuisance in itself or *per se.*"

pellant has not yet shown itself capable of eliminating the nuisance factors in the operation, even if so permitted by the Trial Court. There was testimony as to flies, maggots, and odors. The appellant's witnesses said that the odors could be overcome by the chemical method; that the instant processing of the offal would tend to dispose of the maggots; and that the keeping of the containers constantly covered would tend to dispose of the green flies, provided the chemicals entirely eliminated the odors. Has the appellant shown a present ability to operate its plant strictly in keeping with such sanitary requirements? We fail to find any tangible evidence of present ability: rather, there is proof of financial *inability*.

But the Trial Court which granted this permanent injunction has the continuing power to amend or vacate the injunctive decree on proper showing, provided no vested rights are abrogated. *Stane* v. *Mettetal*, 213 Ark. 404, 210 S. W. 2d 804; *Local Union* v. *Mo. Pac.*, 221 Ark. 509, 254 S. W. 2d 62. In 28 Am. Jur. 494, the holdings on permanent injunctions are summarized in this language:

"Unless otherwise provided by its terms, the injunction will remain in force as long as the court may feel that the protection which it affords is necessary to complainant's rights, or until conditions demand a modification of that protection or its entire removal. There is no doubt but that the court which renders a decree for a permanent or perpetual injunction may open or modify the same where the circumstances and circumstances of the parties are shown to have so changed as to make it just and equitable to do so, and especially where the decree itself reserves the right."

The appellant is free at any time to move the Trial Court to modify the permanent injunction, upon proper showing.

Therefore, the appeal is dismissed.

The Chief Justice and Mr. Justice George Rose Smith think the decree should be affirmed.