Lowell TAYLOR *v.* ZANONE PROPERTIES, *et al.*;
STATE of Arkansas, *et al. v.* ZANONE
PROPERTIES, *et al.*

99-1515 30 S.W.3d 74

Supreme Court of Arkansas
Opinion delivered October 26, 2000

*Sloan-Rubens,* by: *Kent J. Rubens,* for appellant Lowell Taylor.

*Mark Pryor,* Att'y Gen., by: *Charles L. Moulton* and *Warren Readnour,* Ass't Att'ys Gen., for appellants State of Arkansas and Arkansas Soil & Water Conservation Commission.

*James F. Goodhart* and *James B. Watson,* for appellant Arkansas Game & Fish Commission.

*Nance & Nance, P.A.,* by: *Boone Nance;* and *The Bogatin Law Firm, PLC,* by: *G. Patrick Arnoult,* for appellee Zanone Properties.

ANNABELLE CLINTON IMBER, Justice. The case before us consists of two appeals arising from the same cause of action in the Chancery Court of Crittenden County that have been consolidated for our review. First, the appeal of *Lowell Taylor v. Zanone Properties, et al.,* presents the issue of whether the chancery court erred by modifying its findings of fact more than ninety days after the entry of the final judgment. Second, the appeal of the *State of Arkansas, et al. v. Zanone Properties, et al.,* raises issues of proper joinder, sovereign immunity, the statutory duties of various state agencies, and the jurisdiction of chancery court to issue mandamus, as well as the modification of an order after ninety days.

On October 7, 1994, several lawsuits were filed against Mr. Lowell Taylor and Ms. Rebecca Hemenway in the Chancery and Circuit Courts of Crittenden County. Plaintiffs were members of the Zanone family and the Zanone family businesses.[1] Plaintiffs and defendants were all owners or tenants of real property bordering on Horseshoe Lake. Plaintiffs, whose properties were located upstream from the defendants' property, alleged that defendants operated their privately constructed water control structure on Beck's Bayou in such a manner as to cause the flooding of their property. They alleged that the high water level maintained by the structure resulted in flooding to their farmland because Beck's Bayou is the only natural drainage for the runoff waters from Horseshoe Lake. Plaintiffs sought both monetary and injunctive relief.

As of July 31, 1997, several of the cases against Mr. Taylor and Ms. Hemenway had been voluntarily dismissed. The four remaining circuit court cases were consolidated into one case and trans-

---

[1] The plaintiffs ultimately remaining in this matter were the Zanone Brothers Partnership; George Zanone, Jr., and Philip R. Zanone, Jr.; Zanone Properties; and Zanone Plantation Joint Venture.

ferred to the chancery court to be tried simultaneously with the claims pending there. Ms. Marilyn M. Wilkinson and Ms. Rebecca M. Crowell were joined as necessary party defendants, representing the estate of Ms. Hemenway. The State of Arkansas was joined as a necessary party upon the motion of the plaintiff, Zanone Properties. Finally, other owners and lessees of property on Horseshoe Lake intervened in the action.

On July 2, 1997, the State of Arkansas filed a motion for partial summary judgment, asserting that Horseshoe Lake is a navigable body of water owned by the State and held in trust for the citizens of Arkansas. Based upon that assertion, the State claimed to be the only party in interest with the legal right to change or manipulate the National Geoditic Vertical Datum ("NGVD"), or normal level, of Horseshoe Lake. On July 31, 1997, the chancery court filed an agreed order declaring Horseshoe Lake to be navigable. Following a six-day trial on the merits, the claims for monetary damages against the estate of Ms. Hemenway, and against her daughters Ms. Wilkinson and Ms. Crowell, were dismissed. The chancery court also ruled in favor of Mr. Taylor on the issue of liability, awarding no monetary damages, but issued the injunctive relief sought by the Zanone plaintiffs against Mr. Taylor.

In a decree filed on September 29, 1998, the chancery court ordered Mr. Taylor and his agents to operate the water control structure on Beck's Bayou in such a manner that the maximum level of his structure would be limited to 194.2 feet from December 1 of each year to the following first of May, and to 193.2 feet from May 1 to December 1 each year.[2] The chancery court also reaffirmed that Horseshoe Lake is the property of the State, held in trust for the public. After noting that "it is the responsibility of the State of Arkansas to regulate the level of Horseshoe and not that of Taylor," the chancery court ordered the State "to monitor Horseshoe and to see that the lake levels decreed herein are followed by Taylor."[3] No

---

[2] The court's findings with respect to elevations above median sea level are based upon the Sorrell gauge.

[3] The chancery court's memorandum opinion dated May 13, 1998 specifically provided that its order was directed to the Arkansas Game and Fish Commission. Before the decree was entered, counsel for the State of Arkansas advised the court that he had been notified by the Commission that it could not legally accept responsibility for carrying out the court's order. Ultimately, the court's decree entered on September 29, 1998, was directed to the State of Arkansas and not to the Arkansas Game and Fish Commission.

appeal was taken from this order.

On March 31, 1999, the Zanone plaintiffs filed a petition to show cause, seeking to hold the State of Arkansas in contempt for failing to implement the September 29, 1998, decree. The chancery court ordered the State of Arkansas to appear and show cause why it should not be held in contempt. The Zanone plaintiffs alleged that the State had made no attempt to monitor the lake and that obstructions, including a beaver dam, in Beck's Bayou threatened to cause flooding on their property during the rainy season if the State did not act. At the conclusion of a hearing on April 28, 1999, at which no evidence was presented, the chancery court held that the State was not in contempt, and ordered the State to take lake-level readings on Horseshoe Lake twice each month and report to the court and counsel any deviations from the levels previously decreed by the court. This instruction was incorporated into the chancery court's order entered on July 2, 1999.[4] The chancery court further held that it would not decide at that time whether or not the State had any obligation to remove beaver dams from Beck's Bayou as a cause of flooding because there had "been no proof of damages attributable to any such cause at either of the previous hearings or at these hearings." Mr. Taylor objected to this characterization of the previous proceedings in a motion filed on July 12, 1999, and at hearings that took place on July 7 and July 28, 1999.[5]

---

[4] Although the court's order on the petition to show cause entered on July 2, 1999, reflects that the hearing began on April 15, 1999, and continued to April 28, 1999, the record contains no transcript of a hearing on April 15, 1999. The State's motion for reconsideration filed on June 28, 1999, makes the following reference to a hearing on April 15, 1999:

> On April 15, 1999, the Court conducted a hearing on the Plaintiff's Motion to Show Cause. At this hearing, the Court was informed that, at that time, a state agency had not volunteered to implement the Court's decree entered on September 29, 1998. But if the Court intended in its Decree to have state personnel monitor the Defendant's water control structure to insure that its operation complied with the Court's Decree, then personnel from Soil and Water Conservation Commission would be willing to achieve that directive.

Furthermore, the State's motion for reconsideration states that personnel from the Arkansas Soil and Water Conservation Commission visited Mr. Taylor's water control structure on April 27, 1999, and determined that it was being operated consistently with the court's September 29, 1998 decree, which information was reported to the court at the hearing on April 28, 1999. The transcript of that hearing, however, does not reflect the introduction of any such evidence.

[5] At the hearing on April 28, 1999, the chancellor also said: ". . . my memory of

On June 28, 1999, the State filed a motion for reconsideration or alternatively motion for new trial, arguing that the State of Arkansas, appearing *ex rel* through the office of the Attorney General, has no authority to command or force other state agencies to implement the orders of the court when those agencies are not parties to the lawsuit. Because there had been no findings of fact at the previous trial concerning which state agency was responsible for monitoring Horseshoe Lake, the State requested a new trial on that sole issue. The State further requested that the court join at the new trial any agencies it might deem responsible for implementation of its decree.

By order signed on July 15, 1999, and filed on July 28, 1999, the chancery court directed officials from both the Arkansas Game and Fish Commission and the Arkansas Soil and Water Conservation Commission to appear before the Court on July 28, 1999, and present evidence and testimony as to why their respective agencies should not be held responsible for "monitoring the water levels of Horseshoe Lake." Counsel for the commissions appeared on the specified date for the limited purpose of answering the chancery court's directive. Again, no evidence was presented, and the hearing consisted entirely of legal argument by counsel. Both commissions asserted that the court had no jurisdiction over them because neither agency had ever been made a party to the lawsuit; nor had either agency waived its right to sovereign immunity under Article 5, section 20, of the Arkansas Constitution. The commissions also asserted that they lacked the statutory authority or obligation to monitor the level of the water at Horseshoe Lake.

In a letter opinion dated July 30, 1999, the chancery court rejected all of these arguments and ordered both commissions to monitor water levels on Horseshoe Lake and to fully comply with the court's prior order. The court's letter opinion specifically directed that the water level on the lake be read "at least two times per month; that a written record be kept of the readings; and that such records be made available on request." On August 4, 1999, the chancery court sent a letter to all parties requesting briefs on the

---

this case was not the beaver dams causing the flooding. It was the earthen dam he [Taylor] built and this elaborate dam." Mr. Taylor objected at the hearing and in subsequent correspondence with the court. The statement was not included in the order entered on July 2, 1999.

issue of the court's subject-matter jurisdiction. Specifically, the chancery court expressed concern that "what the court is in effect doing, is issuing a writ of mandatum," which is outside the jurisdiction of a chancery court.

On August 13, 1999, the chancery court denied Mr. Taylor's motion to strike the modified findings of fact in the July 2, 1999 order regarding the cause of flooding on the Zanone properties. From this denial, Mr. Taylor appeals, arguing that the trial court did not have the authority to modify its order more than ninety days after the entry of judgment.

On September 10, 1999, the trial court issued an order rejecting the defenses of sovereign immunity and insufficient service of process asserted by the commissions. The chancery court held that both agencies were not only authorized, but were obligated, by statute to perform the monitoring duties required by the chancery court in this matter. The court further held that its order was not a mandamus, but merely an injunction, which could be issued against the State because "the State's neglect of Horseshoe Lake was arbitrary and capricious."

The State of Arkansas, the Arkansas Game and Fish Commission, and the Arkansas Soil and Water Conservation Commission now appeal from the orders entered by the chancery court on July 2, 1999, and September 10, 1999. The commissions also appeal from the order entered by the chancery court on July 28, 1999. The appeals by the State and the commissions have been consolidated with Mr. Taylor's appeal.

## I. Joinder

In their first point on appeal, the commissions argue that the chancery court had no authority to order them to, among other things, monitor the level of Horseshoe Lake because they were not properly joined as parties to the lawsuit.

■ "All judgments, orders, sentences, and decrees made, rendered, or pronounced by any of the courts of the state against anyone without notice, actual or constructive, and all proceedings had under judgments, orders, sentences, or decrees shall be absolutely null and void." Ark. Code Ann. § 16-65-108 (1987); *see also*

*Sides v. Kirchoff*, 316 Ark. 680, 874 S.W.2d 373 (1994) (stating that "when there has been no proper service and, therefore, no personal jurisdiction over the defendants in a case, any judgment is void ab initio").

█ It is undisputed that the State of Arkansas, represented by the Office of the Attorney General, was a party to the proceedings and bound by the judgment of the chancery court in this matter. However, the commissions were never served with a summons in this matter. No complaint or allegation was ever made against either commission, and neither commission entered a general appearance. Furthermore, the chancery court did not properly join the commissions pursuant to Rule 19 of the Arkansas Rules of Civil Procedure. It is axiomatic from the plain language of Rule 19 that, because joinder is proper only as to a person subject to service of process, then service of process must be made for joinder to be proper. Ark. R. Civ. P. 19. *See also* Wright, Miller, *Federal Practice and Procedure*, § 1604, at 41 (2d ed. 1986) (difficulties arise if absentee cannot be effectively joined because he is not subject to service of process). There is no evidence to indicate that the commissions were ever served with process. The chancery court instead held that the commissions were already parties to the action because the Attorney General is required to represent all state agencies pursuant to Arkansas Code Annotated section 25-16-702 (Repl. 1996). According to the court's reasoning, because the State of Arkansas was already a party to the action and was represented by the Attorney General, it would necessarily follow that the two commissions were also parties to the action and subject to the jurisdiction of the court. We disagree.

█ Although the State of Arkansas was indeed a party to the litigation between Zanone Properties and Lowell Taylor, the Arkansas Game and Fish Commission and the Arkansas Soil and Water Conservation Commission were not parties to the litigation. The State of Arkansas appeared *ex rel* before the chancery court. In other words, the Attorney General entered an appearance in this action in the name of the State of Arkansas, but at the request of the plaintiffs in furtherance of the Zanone plaintiffs' own private interests. *See Black's Law Dictionary* 582 (6th ed. 1990). The commissions were never served with process, they did not enter an appearance, and they were never joined as necessary parties. Governmental agencies are independent entities who must be

joined as parties even if the governmental entity is a party to the action. *See Pulaski County v. Jacuzzi Bros. Div.,* 317 Ark. 10, 875 S.W.2d 496 (1994) (holding that, although the county itself was a proper party to the suit, the official who would be charged with carrying out the order of the court should have been joined as a necessary party to the action); *IBM Credit Corp. v. Pulaski County,* 316 Ark. 580, 873 S.W.2d 161 (1994) (noting that failure to join either assessor or board of equalization left void in ability to effect the court's order). The fact that the State of Arkansas was a party to the action was insufficient to extend the jurisdiction of the court over the two independent state commissions.

 Nor is it sufficient that the Attorney General, who is counsel for all state agencies, was already involved in the action. The office of the Attorney General is a separate constitutional office, not merely an arm of the executive branch. Ark. Const. art. 6, § 1. The Attorney General represents the agencies and departments of the State only when his services are needed and the request for services has been certified by the agency to the Attorney General. Ark. Code Ann. § 25-16-702(a) (Repl. 1996); *see Parker v. Murry,* 221 Ark. 554, 254 S.W.2d 468 (1953) (stating that it is "apparent to us that the Attorney General may intervene in a suit prosecuted by the Commissioner of Revenues, as here, when and only when, the Commissioner of Revenues needs his services and so certifies this need to the Attorney General, and that such was the intent of the Legislature"). As noted above, the Attorney General represented the State *ex rel* in this action at the behest of the Zanone plaintiffs. At no time did the Attorney General appear in this action at the request of the commissions. Consequently, the chancery court erred by assuming jurisdiction over the agencies merely because the State of Arkansas was a party to the action. We hold that the orders of the chancery court directed toward the Arkansas Game and Fish Commission and the Arkansas Soil and Water Conservation Commission are null and void.

In light of this holding that the chancery court erred by assuming jurisdiction over the Arkansas Game and Fish Commission and the Arkansas Soil and Water Conservation Commission, we need not address the commissions' remaining arguments for reversal.

## II. Rule 60 Modification

Both the State of Arkansas and Mr. Taylor argue that the chancery court had no authority to modify its decree more than ninety days after the entry of a final judgment. Mr. Taylor challenges the order entered on July 2, 1999. The State challenges both the July 2, 1999 order as well as the order entered on September 10, 1999. The Zanone appellees maintain that the language in the July 2 order challenged by Mr. Taylor accurately reflects the court's findings of fact in the original decree, and that the more specific details in the orders challenged by the State are merely clarifications of the chancery court's previous decree. Thus, the Zanone appellees contend there has been no improper modification.

In its original decree of September 29, 1998, from which no appeal was taken, the chancery court held that:

> 40. The court finds for Taylor on the question of liability.
>
> 41. In 1997 Zanone ran his pumps in May and suffered no damage. In other years, when he suffered damages, he waited until June, and by his own admission, did nothing to mitigate his damages. The court's granting of injunctive relief is not inconsistent with its denial of damage.
>
> 43. Like the *Solomon* decision, the damages suffered by Zanone seem related more to the acts of nature than Taylor's dam. Zanone needed to pump before the dam was built. The area is poorly drained with beaver dams, fallen trees, drift, silt and accumulated limbs and leaves. Taylor's experts, which the court credits, estimate the dam contributed little to Zanone's damages.

Based upon these findings of fact, the chancery court denied monetary damages against Mr. Taylor, but awarded injunctive relief, requiring Mr. Taylor to operate his water control structure in a specified manner. The chancery court further issued the following decree to the State of Arkansas:

> It is the responsibility of the State of Arkansas to regulate the level of Horseshoe and not that of Taylor. Thus this court's order is directed not only to Taylor but also to the State of Arkansas, and the State of Arkansas is also ordered to monitor Horseshoe and to see that the lake levels decreed herein are followed by Taylor.

As has been noted, no appeal was taken from that decree entered on September 29, 1998. Several months later, on March 31, 1999, the Zanone plaintiffs filed a petition to show cause seeking to hold the State of Arkansas in contempt. On April 28, 1999, the chancery court heard argument on the petition to show cause and noted that the court saw no reason why the State of Arkansas would find it difficult "to go out and monitor, maybe six or eight times a year" to insure compliance with the court's decree. The chancery court subsequently issued an order on July 2, 1999, that stated:

> 4. The Court is not deciding at this time the issue of whether or not the State of Arkansas has any obligation to remove beaver dams from Beck Bayou or Beck Ditch as a cause of flood conditions since there has been no proof of damages attributable to any such cause at either the previous hearings or at these hearings related to the Petition to Show cause. The Court reserves the right to rule on the State of Arkansas' responsibility if and when there is a showing of a legitimate problem of flooding caused by beaver dams.
>
> 5. There has not been a showing of contempt by the State of Arkansas of this Court's previous Decree of September 29, 1998 and the Petition for Contempt is therefore dismissed.

However, the chancery court did order the State to "take lake level readings on Horseshoe Lake at least twice each month with two weeks in between readings" and "to report to this Court, with copies of the reports to the attorneys of record in this cause, any deviations above the levels prescribed by the Court's previous decree. . . ." The chancery court further ordered the State to make the reports available to the attorneys of record in this action and to provide copies of the reports to the parties or their attorneys upon request. In its September 10, 1999 order, the chancery court extended these obligations to include not only the State of Arkansas, but also the commissions. Also, in the September 10 order, the chancery court found that the State had acted arbitrarily and capriciously in its neglect of Horseshoe Lake. As set forth above, we have already held that the order as it is applicable to the commissions is null and void. We must now address the validity of these orders as to Mr. Taylor and the State of Arkansas.

## A. Mr. Taylor

Mr. Taylor argues that the chancery court had no authority to modify its findings of fact more than ninety days after entry of the decree absent an evidentiary hearing. Specifically, he objects to the language in the order dated July 2, 1999, wherein the chancery court stated that there had been no finding that beaver dams were the cause of any flooding.

 A trial court may modify a judgment at any time to correct a purely clerical error. Ark. R. Civ. P. 60(a). After the expiration of ninety days, however, the trial court may modify its orders for reasons other than to correct a clerical error only under the following conditions: (1) granting a new trial based upon newly discovered evidence; (2) granting a motion for new trial in proceedings against a constructively summoned defendant; (3) for misprisions of the clerk; (4) for misrepresentation or fraud; (5) for erroneous proceedings against an infant or incompetent; (6) for the death of a party prior to judgment; or (7) for errors in judgment shown by an infant within twelve months of reaching majority. Ark. R. Civ. P. 60(c). Furthermore, although the time restraints placed upon trial courts in modifying other orders are not applicable to the modification of injunctions, the trial court must find that the circumstances underlying the injunction have changed before it is authorized to modify an injunction. *West v. Belin*, 314 Ark. 40, 858 S.W.2d 97 (1993) (stating that a trial court retains jurisdiction to modify an injunction beyond the time limit placed on other types of orders or decrees); *Ozark Bi-Products, Inc. v. Bohannon*, 224 Ark. 17, 271 S.W.2d 354 (1954) (holding that trial court may modify injunction where the circumstances of the parties are shown to have so changed that it is just and equitable to do so); *see also Haberman v. Van Zandvoord*, 1 Ark. App. 203, 614 S.W.2d 242 (1981) (holding that, upon proper notice and following a hearing wherein the evidence was fully litigated, modification was not an abuse of discretion).

There is no finding in the record of any change in circumstances supporting modification, and the Zanone appellees do not argue that circumstances have changed. Neither does the record reflect that the change was authorized pursuant to Rule 60 and the Zanone appellees do not argue as such. Therefore, if the change in the language of the court is indeed a modification of the prior

order, the chancery court acted outside of its authority and the order is a nullity. *Hayden v. Hayden,* 291 Ark. 582, 726 S.W.2d 287 (1987).

In its original 1998 decree, the chancery court found as a matter of fact that the damages to the Zanone property seemed to be related more to Zanone's failure to mitigate damages and to acts of nature, such as beaver dams and debris, than to the Taylor water control structure. In fact, the chancery court found credible the evidence that the Taylor structure contributed little to the plaintiffs' damages; and yet, in its July 2, 1999 order, the chancery court noted that there had been no evidence of damages attributable to beaver dams. On its face, this appears to be a minor change in the court's language. Certainly, the chancery court had never specifically found that beaver dams had caused damage to the Zanone property. However, the court had found that the damages suffered by Zanone were related more to acts of nature, which included beaver dams, than to Mr. Taylor's water control structure. This minor alteration in the decree's language might not merit further scrutiny were it not for the findings that the chancery court issued orally from the bench: "My memory of this case was not the beaver dams causing the flooding. It was the earthen dam [Mr. Taylor] built and this . . . elaborate dam."

In its September 29, 1998 decree, the chancery court specifically held that Mr. Taylor was not liable for any damage to the Zanone property. However, following the chancery court's July 2, 1999 order, viewed in light of the court's pronouncements from the bench, the chancery court's findings of fact could be called into question. In effect, the findings of fact in the September 29, 1998 decree have been modified, possibly subjecting Mr. Taylor to future claims for damages where previously he had been found not liable.

It is evident from the record before us that the trial court was not intentionally exercising its authority to modify the decree. It appears that the trial court was merely stating its memory of what its previous findings of fact had been. The difficulty arises because, in so doing, the court altered those findings sufficiently to create confusion as to its previous findings regarding liability. Because no evidence was presented to demonstrate changed circumstances and none of the Rule 60(c) conditions have been shown to support the actions of the court, the modification to the findings of fact, as

stated by the trial court in its order of July 2, 1999, is null and void. *See Hayden v. Hayden, supra.*

### B. The State

The State argues that the trial court modified its September 29, 1998 final judgment in violation of Rule 60 by imposing additional obligations upon them that were not included in the final judgment and by *sua sponte* declaring the State's actions arbitrary and capricious. The Zanone appellees contend that the changes were mere clarifications, not modifications, and were therefore within the court's authority.

In its original decree, the trial court held that it was the responsibility of the State to regulate the level of Horseshoe Lake and then ordered the State to "monitor Horseshoe and to see that the lake levels decreed herein are followed by Taylor." However, in subsequent orders, the trial court imposed more detailed and specific duties upon the State. In the July 2, 1999 order, the chancery court directed the State to "take lake level readings on Horseshoe Lake at least twice each month with two weeks in between readings. . . . to report to this Court, with copies of the reports to the attorneys of record in this cause, any deviations above the levels prescribed by the Court's previous decree" and to provide periodic access to the record of the lake level readings to the attorneys for the parties and to furnish copies of such records upon reasonable request by the parties or their attorneys.

Again, the trial court made no findings regarding the existence of any grounds for modification under Rule 60(c), or the existence of any changed circumstances since entry of the final judgment on September 29, 1998. Moreover, the record does not disclose the existence of any changed circumstances or Rule 60(c) grounds for modification. The Zanone appellees argue that the changes in the order are merely "clarifications" of the court's intentions in the September 29, 1998 decree. We disagree.

"A trial court's power to correct mistakes or errors is to make the record speak the truth, but not to make it speak what it did not speak but ought to have spoken." *Lord v. Mazzanati,* 339 Ark. 25, 29, 2 S.W.3d 76, 78-79 (1999). The record reveals that, as of April 1999, the trial court believed that its order required the

State to merely check the level of the lake six to eight times a year. There is no mention of records to be kept, notice to be given to the court, copies to be sent to counsel, or of bi-monthly water level readings. These orders were added to the trial court's decree as of July 2, 1999, and reaffirmed in the order dated September 10, 1999. Clearly, the chancery court changed the terms of the relief afforded in the original decree. It did not merely clarify its original decree. The changes were made with no findings of changed circumstances or Rule 60(c) conditions. Similarly, the trial court modified its decree by finding that the State had acted arbitrarily and capriciously in its actions when no new evidence had been presented to the court upon which to base this conclusion. *See Lord v. Mazzanati, supra; Ozark Bi-Products, Inc. v. Bohannon, supra.* Consequently, we hold that the orders of July 2, 1999, and September 10, 1999, are null and void. *Hayden v. Hayden, supra; see also Slaton v. Slaton,* 330 Ark. 287, 956 S.W.2d 150 (1997). In light of this holding, we need not address the State's remaining arguments for reversal.

Reversed.

BROWN, J., concurs.

R OBERT L. BROWN, Justice, concurring. On September 29, 1998, the chancery court ordered the State of Arkansas to monitor Horseshoe Lake to make sure that the decreed lake levels were followed by Lowell Taylor. On July 2, 1999, the chancery court ordered the State of Arkansas to take lake level readings on Horseshoe Lake at least twice a month and report to the court and to the attorneys of record. On July 28, 1999, the chancery court directed officials from Arkansas Game and Fish Commission and Arkansas Soil and Water Commission, neither of which was a party to the action, to appear and tell the court why the two commissions should not be responsible for monitoring the lake levels. On September 10, 1999, the chancery court held that the two Commissions were obligated by law to oversee water levels and found that the State of Arkansas's failure to monitor Horseshoe Lake constituted arbitrary and capricious conduct.

The majority opinion correctly concludes that the two state commissions were never joined as parties to the action and, thus, could not be held accountable for failure to act. Having the State of

Arkansas as a party was simply not enough to bring specific state commissions before the court.

By the same token, I cannot condone the argument made by counsel from the Attorney General's office at oral argument that he took the chancery court's orders to mean that counsel himself and the Attorney General's staff were to travel to Horseshoe Lake in Crittenden County to gauge the lake levels. That is an unreasonable interpretation of the court's orders. Clearly, the chancery court did not have counsel from the Attorney General's office in mind when he ordered the State to check lake levels. Though the proper commissions to perform the task at hand were not before the court, it strains credulity for counsel for the Attorney General's office to argue that he believed he was the enforcement mechanism for the State.